# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| DENNIS WHITE, ) | |
| ) | |
| Plaintiff, ) | Civil Action No.: 1:21-CV-10952-LTS |
| ) | |
| v. ) | |
| ) | |
| CITY OF BOSTON and ) | |
| ACTING MAYOR KIM JANEY, ) | |
| ) | |
| Defendants. ) | |

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S
## <u>MOTION TO AMEND HIS COMPLAINT</u>

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ...................................................................................................................1

PROCEDURAL AND FACTUAL BACKGROUND.........................................................1

ARGUMENT ......................................................................................................................6

    I.      Standard of Review...........................................................................................6

    II.     Plaintiff's Motion to Amend the Complaint to Add 42 U.S.C. § 1983
          Claims is Futile ...............................................................................................6

          A.     The City is not liable under the § 1983 claims alleged by
                  Plaintiff .................................................................................................7

          B.     The Acting Mayor is immune from suit under § 1983 ...............................8

          C.     Plaintiff's § 1983 claims in Counts II and III are futile because
                  Plaintiff fails to allege any constitutional violation ..................................10

    III.    Plaintiff's Motion to Add an MCRA Claim is Futile ............................................11

          A.     Plaintiff's MCRA claim fails because neither the City nor the
                  Mayor may be sued pursuant to the statute..............................................11

          B.     Even if an MCRA claim could be raised against Defendants,
                  Plaintiff fails to allege a violation of the MCRA.....................................12

          C.     Plaintiff's MCRA claim fails for the independent reason that
                  Chapter 151B is the exclusive remedy for employment
                  discrimination claims ............................................................................14

    IV.    Plaintiff Fails to State a Defamation Claim Against the Mayor ...........................14

          A.     The Mayor's statements were protected by the conditional privilege .......14

          B.     Even if the conditional privilege did not apply, Plaintiff fails to state a
                  claim for defamation .............................................................................17

    V.     Plaintiff Fails to State a Claim That Defendants Violated the Removal Statute ...18

    VI.    Plaintiff Has Not Stated a Claim for Breach of Implied Contract ........................20

    VII.   Plaintiff Has Not Stated a Claim for Breach of the Covenant of Good Faith
          and Fair Dealing...............................................................................................22

XIII.   Plaintiff Fails to State a Claim for Violation of His Right to Privacy ...................25

IX.   Plaintiff Fails to State a Claim for Discrimination Under M.G.L. c. 151B ...........27

CONCLUSION..................................................................................................................30

# TABLE OF AUTHORITIES

**Federal Cases**

*Adorno v. Crowley Towing and Transp. Co*.,
  443 F.3d 122 (1st Cir. 2006) .......................................................................................6

*Ahanotu v. Mass. Tpk. Auth.*,
  466 F. Supp. 2d 378 (D. Mass. 2006) .........................................................................14

*Alston v. Town of Brookline*,
  997 F.3d 23 (1st Cir. 2021).....................................................................................10, 11

*Araujo v. UGL Unicco-Unicco Operations*,
  53 F. Supp. 3d 371 (D. Mass. 2014) .......................................................................28, 29

*Arroyo v. City of Boston*,
  No. 20-cv-12082-DJC, 2021 WL 2338879 (D. Mass. June 8, 2021) ...................12, 16, 17, 18

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).....................................................................................................6

*Ayala-Sepulveda v. Mun. of San German*,
  671 F.3d 24 (1st Cir. 2012)........................................................................................11

*Ayash v. Dana-Farber Cancer Inst.*,
  443 Mass. 367 (2005) ................................................................................................23

*Barrigas v. United States*,
  No. 17-cv-10232-ADB, 2018 WL 1244780 (D. Mass. Mar. 9, 2018)..................................25

*Bratt v. Int'l Bus. Machs. Corp.*,
  392 Mass. 508 (1984) ................................................................................................26

*Burke v. Town of Walpole*,
  405 F.3d 66 (1st Cir. 2005)....................................................................................14, 15, 17

*Christensen v. Kingston Sch. Comm.*,
  360 F. Supp. 2d 212 (D. Mass. 2005) ........................................................................24

*Cummings v. City of Newton*,
  298 F. Supp. 3d 279 (D. Mass. 2018) .......................................................................12, 13

*Dick v. Wood Hole Oceanographic Inst*.,
  No. 21-cv-10007-DJC, 2021 WL 3146049 (D. Mass. July 26, 2021) ....................................28

*Fabiano v. Hopkins*,
    352 F.3d 447 (1st Cir. 2003) ................................................................................................7, 8

*Gaines v. Boston Herald, Inc.*,
    998 F. Supp. 91 (D. Mass. 1998) ............................................................................................30

*Glassman v. Computervision Corp.*,
    90 F.3d 617 (1st Cir. 1996) ......................................................................................................6

*Hatch v. Dept. for Children Youth and Their Families*,
    274 F.3d 12 (1st Cir. 2001) ......................................................................................................6

*Higgins v. State Street Corp.*,
    323 F. Supp. 3d 203 (D. Mass. 2018) ...............................................................................27, 29

*Landry v. Mier*,
    921 F. Supp. 880 (1st Cir. 1996) .......................................................................................15, 16

*Limone v. Condon*,
    372 F.3d 39 (1st Cir. 2004) ......................................................................................................9

*Maldonado v. Fontanes*,
    568 F.3d 263 (1st Cir. 2009) ....................................................................................................9

*Martinez v. New England Med. Ctr. Hosps., Inc.*,
    307 F. Supp. 2d 257 (D. Mass. 2004) ....................................................................................26

*Mason v. Central Mass. Transit Mgmt./Worcester Regional Transit Auth.*,
    394 F. Supp. 3d 166 (D. Mass. 2019) ....................................................................................14

*Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*,
    412 F.3d 215 (1st Cir. 2005) ..................................................................................................23

*Mass. Inst. of Tech. v. Rsch., Dev. & Tech. Emps. Union*,
    980 F. Supp. 2d 8 (D. Mass. 2013) ........................................................................................18

*McAdams v. Mass. Mut. Life Ins. Co.*,
    391 F.3d 287 (1st Cir. 2004) ..................................................................................................24

*McBride v. Massachusetts Com'n Against Discrimination*,
    677 F.Supp.2d 357 (D. Mass. 2009) ......................................................................................29

*Mississippi Public Employees' Retirement System v. Boston Scientific Corp.*,
    523 F.3d 75 (1st Cir. 2008) ......................................................................................................2

*Mullenix v. Luna*,
    577 U.S. 7 (2015) ...................................................................................................................10

*Oberg v. City of Taunton*,
    972 F. Supp. 2d 174 (D. Mass. 2013) ...................................................................8

*Pollard v. Georgetown Sch. Dist.*,
    132 F. Supp. 3d 208 (D. Mass. 2015) ................................................................11

*Saltzman v. Town of Hanson*,
    935 F. Supp. 2d 328 (D. Mass. 2013) ...............................................................23

*Schatz v. Republican State Leadership Comm.*,
    669 F.3d 50 (1st Cir. 2012) ..................................................................................6

*St. Hilaire v. City of Laconia*,
    71 F.3d 20 (1st Cir. 1995) ....................................................................................7

*Taylor v. Swartwout*,
    445 F. Supp. 2d 98 (D. Mass. 2006) .................................................................25

*Thomas v. Harrington*,
    909 F.3d 483 (1st Cir. 2018) ..............................................................................13

*Wilson v. Layne*,
    526 U.S. 603 (1999) .............................................................................................9

*Wilson v. Town of Fairhaven*,
    No. 18-11099-PBS, 2019 WL 1757780 (D. Mass. Mar. 4, 2019) .......................12

*Young v. Wells Fargo Bank, N.A.*,
    717 F.3d 224 (1st Cir. 2013) ..............................................................................20

**State Cases**

*Anthony's Pier Four, Inc. v. HBC Assoc.*,
    411 Mass. 451 (1991) ........................................................................................23

*Anzalone v. Admin. Office of Trial Ct.*,
    457 Mass. 647 (2010) ........................................................................................18

*Edwards v. Commonwealth*,
    477 Mass. 254 (2017) ........................................................................................16

*Flomenbaum v. Commonwealth*,
    451 Mass. 740 (2008) ..................................................................................19, 22

*Hastings and Sons Publ'g Co. v. City Treasurer of Lynn*,
    374 Mass 812 (1978) .........................................................................................26

*Hogan v. Collins*,
    183 Mass. 43 (1903) ..........................................................................................19

*Lexington Ins. Co. v. All Regions Chem. Labs, Inc.*,
   419 Mass. 712 (1995) ...............................................................................20

*McSweeney v. Town Manager of Lexington*,
   379 Mass. 794 (1980) ...............................................................................19

*Mulgrew v. Taunton*,
   410 Mass. 631 (1991) ...............................................................................15

*Nelson v. Salem State Coll.*,
   446 Mass. 525 (2006) ...............................................................................25

*Ossinger v. City of Newton*,
   26 Mass. App. Ct. 831 (1989)...................................................................23

*Peckham v. Boston Herald, Inc.*,
   48 Mass. App. Ct. 282 (1999)...................................................................26

*Rotkiewicz v. Sadowsky*,
   431 Mass. 748 (2000) ...............................................................................17

*Shephard v. Bay Windows, Inc.*,
   No. 01-0284, 2003 Mass Super. LEXIS 277 (Mass. Super. Ct. Sept. 22, 2003)....................25

*Siles v. Travenol Labs., Inc.*,
   13 Mass. App. Ct. 354 (1982)...................................................................24

*Targus Grp. Int'l, Inc. v. Sherman*,
   76 Mass. App. Ct. 421 (2010)...............................................................23, 24

*Uno Rests., Inc. v. Boston Kenmore Realty Corp.*,
   441 Mass. 376 (2004) ...........................................................................23, 24

**Statutes**

42 U.S.C. § 1983................................................................................6, 7, 8, 10

M.G.L. c. 4, § 7......................................................................................27

M.G.L. c. 66, § 10...................................................................................27

M.G.L. c. 151B ......................................................................................27

M.G.L. c. 214, § 1B.................................................................................25

M.G.L. c. 12, § 11I..................................................................................11

**Rules**

Fed. R. Civ. P. 12(b)(6)..............................................................................................6, 11

## INTRODUCTION

Defendants City of Boston (the "City") and Acting Mayor Kim Janey ("Acting Mayor Janey" or the "Acting Mayor") (collectively, the "Defendants") oppose Plaintiff's revised motion to amend his complaint.

Acting Mayor Janey dismissed Plaintiff from the position of Commissioner of the Boston Police Department ("BPD") because she concluded that Plaintiff does not possess the qualities essential to lead the BPD.  When faced with an independent investigation into serious allegations of domestic violence, Plaintiff chose not to cooperate.  Throughout the investigation, Plaintiff demonstrated poor judgment and a complete lack of appreciation for the seriousness of the allegations against him.  Plaintiff fought the City, the Acting Mayor, and the independent investigator at every turn.  Once it became clear that his tactics were not working (and in fact, were working against him), Plaintiff filed emergency motions in state court in an attempt to keep the Acting Mayor from exercising her express authority to terminate him.

Now, having failed to obtain any relief based on the sufficiency of the due process Defendants provided him prior to termination, Plaintiff seeks to file a brand new complaint alleging a laundry list of futile claims.  Among Plaintiff's baseless allegations is the ridiculous assertion that the City, through its first Black mayor, discriminated against him because he is Black.  Plaintiff's motion should be denied because all of the claims in the proposed second amended complaint (the "proposed SAC" or "SAC") fail, as a matter of law, to state any claim for which relief may be granted.

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff Dennis White began his career with the BPD in 1987. SAC ¶ 17. In 1999, after a court entered a restraining order against Plaintiff, BPD's Internal Affairs department conducted an investigation into domestic abuse allegations raised against Plaintiff by his ex-wife, Sybil

Mason. *Id.* at ¶¶ 75, 89. Sergeant Hill, the officer charged with conducting the investigation, recommended a finding of "not sustained" as to the question of whether Plaintiff had violated any laws, and a finding of "sustained" as to whether Plaintiff demonstrated a lack of judgment. *Id.* at ¶ 91. Then-Commissioner Paul Evans ultimately reviewed the recommendations and imposed a finding of "filed." *Id.* at ¶ 92.

Over the course of the next twenty years, Plaintiff was promoted within the BPD. *Id.* at ¶ 17. In late January 2021, Mayor Martin Walsh announced that he was naming Plaintiff as Commissioner of the BPD, and Plaintiff was sworn in as Commissioner on February 1, 2021. *Id.* at ¶ 24. Following the news of Plaintiff's new appointment, the Boston Globe published a story regarding Ms. Mason's allegations from 1999. *Id.* at ¶ 25; the Boston Globe article is attached hereto as Exhibit 1.[1]  In light of the serious allegations, on February 3, 2021, Mayor Walsh placed Plaintiff on administrative leave. *Id.* at ¶ 26. Soon thereafter, the City engaged an independent investigator to investigate the matter. *Id.* at ¶¶ 26-27.

On March 24, 2021, Kim Janey was sworn in as Acting Mayor. On April 1, 2021, approximately one week after becoming Acting Mayor, Acting Mayor Janey held a meeting with Plaintiff and his attorney, at which time she conveyed that she would wait until the investigation was complete before making any decisions about Plaintiff's position as Commissioner. *Id.* at ¶ 32. Plaintiff met with the independent investigator on April 15, 2021, to provide his account of the events relating to the allegations against him. *Id.* at ¶ 33. During the interview, Plaintiff refused to answer a number of the investigator's questions. *Id.* at ¶ 36. When the investigator asked Plaintiff to meet with her again to answer follow-up questions, he refused. *Id.* at ¶ 40.

---

[1] It is appropriate for the Court to consider documents which Plaintiff referenced, incorporated, and relied upon in framing his proposed SAC. *See Mississippi Public Employees' Retirement System v. Boston Scientific Corp.*, 523 F.3d 75, 86 (1st Cir. 2008).

Throughout the investigation, while he was still on administrative leave, Plaintiff continued to use his office at the BPD. *Id.* at ¶¶ 32-33.

On April 29, 2021, the independent investigator delivered her final report (the "Investigator's Report" or "Report") to the Acting Mayor. *Id.* at ¶ 101; Ex. D to White Affidavit, Dkt. 1-1 at p. 213. The Investigator's Report is attached hereto as Exhibit 2. The Investigator's Report included a number of troubling details regarding Plaintiff's actions during his time at the BPD and throughout the investigation. *See, e.g.*, *id.* at ¶¶ 177-78.  With respect to the substance of the allegations, the Investigator's Report contained several concerning facts and troubling admissions by Plaintiff. *See* Ex. 1 at 5-6 (describing an altercation between Plaintiff and his 19-year old niece which Plaintiff described as a "heated fisticuffs"); *id.* at 10 (stating that an abuse prevention order was entered against Plaintiff in 1999); *id.* at 17 (detailing Plaintiff's own admission in 1999 that there was "physical abuse in the relationship" between him and his then-wife, and that Plaintiff and his ex-wife "pushed each other"). The Report's statements regarding Plaintiff's conduct throughout the investigation were also troubling. For example, when the independent investigator requested Plaintiff's complete cooperation, Plaintiff's counsel informed counsel for the City that Plaintiff "would cooperate in the investigation in a limited manner, agreeing to submit an authorization for a CORI search, but no other background checks, and agreeing to participate in the investigation only with respect to 'Ms. White's allegations of an alleged shooting threat in 1999.'" *Id.* at 3. Additionally, when the investigator interviewed Plaintiff, he and his attorney appeared for the Zoom interview from Plaintiff's office at BPD headquarters, despite the fact that he had been placed on leave. *Id.* at 4. And when the investigator attempted to schedule a follow-up interview with Plaintiff, Plaintiff refused to meet with the investigator in person for a second interview. *Id.* at 4-5.

On May 14, 2021, the Acting Mayor called Plaintiff to notify him that she planned to terminate him, and asked Plaintiff if he would resign or retire as Commissioner. *Id.* at ¶ 102. Plaintiff declined, and the Acting Mayor scheduled a hearing for that afternoon to allow Plaintiff to be heard. *Id.*  In advance of the hearing, the Acting Mayor sent a Notice of Intent to Dismiss letter to Plaintiff, along with a copy of the Investigator's Report. *Id.* at ¶ 103. The Notice of Intent to Dismiss stated that the Acting Mayor intended to dismiss Plaintiff from his position as Commissioner due to "[t]he information contained in the independent investigation regarding complaints of domestic violence and abuse . . . and [Plaintiff's] responses thereto;" Plaintiff's "lack of cooperation and judgment during [the] investigation," Plaintiff's presence at BPD headquarters while on administrative leave, and Plaintiff's failure to demonstrate "any appreciation of the importance of domestic violence concerns to the public or how it might affect the public's perception of the ability of the BPD to respond to incidents of domestic violence." *See* Notice of Intent to Dismiss letter, attached hereto as Exhibit 3; SAC ¶ 122.

Rather than appear for the hearing and present his case to the Acting Mayor, Plaintiff commenced this action. *Id.* at ¶¶ 105-06. Also on May 14, 2021, since the investigation had concluded, Defendants released the investigative report to the public. *Id.* at ¶ 107.

Plaintiff's initial complaint, filed in the Superior Court for Suffolk County, Massachusetts on May 14, 2021, sought a declaratory judgment that the City and the Acting Mayor had not satisfied the requirements of the Removal Statute, as well as a temporary and permanent injunction to enjoin Defendants from removing him as Commissioner until the requirements of the Removal Statute were satisfied. Dkt. 1-1 at 1-4. On that same day, Plaintiff moved for a temporary restraining order and preliminary injunction, as requested in his initial complaint. *Id.* at 56. The Superior Court scheduled a hearing on Plaintiff's motion for May 20,

2021. *Id.* at 63. On May 19, 2021, Plaintiff filed his First Amended Complaint, asserting claims based on his due process rights under the United States Constitution. *Id.* at 121.

On May 25, 2021, the Superior Court denied Plaintiff's motion for a temporary restraining order and preliminary injunction, holding that "[i]n light of the sparse but unambiguous language of the Removal [Statute], and the limited pretermination due process to which he is constitutionally entitled, it is unlikely that the Commissioner will prevail on the merits of his claim[.]" *Id.* at 351. That same day, Plaintiff filed a petition seeking interlocutory review of the Superior Court's order, and on May 27, 2021, a single justice of the Massachusetts Appeals Court denied the petition. *Id.* at 360.

On June 2, 2021, Plaintiff appeared for a termination hearing before the Acting Mayor. SAC ¶ 118. On June 7, 2021, the Acting Mayor terminated Plaintiff. *Id.* at ¶ 120. The termination letter provided the reasons for Plaintiff's termination, including, among other things, the "cloud of uncertainty about [the allegations] and as a result, [Plaintiff's] fitness to lead the BPD," Plaintiff's failure "to demonstrate an appreciation of the public concern around domestic violence or how those charges might affect the public's perception of [Plaintiff's] ability to lead the BPD," and Plaintiff's "lack of cooperation and judgment during the investigation." *See* Termination Letter, attached hereto as Exhibit 4; SAC ¶ 121.

On June 7, 2021, Defendants removed this action to Federal Court. *See* Dkt. 1. On June 30, 2021, after Defendants had answered Plaintiff's First Amended Complaint and filed a motion for judgment on the pleadings, Plaintiff moved to amend his complaint once again.[2] Dkt. 15. Apparently realizing his failure to state any cognizable claim, Plaintiff now abandons the claims set forth in his initial and First Amended Complaints and attempts to assert an entirely new list of

---

[2] On July 30, Plaintiff filed an amended motion to amend, adding his state law discrimination claims to the proposed SAC. Dkt. 37.

claims. This attempt should be denied. Like his initial claims, Plaintiff's proposed claims are not actionable. The Proposed SAC does not state any claim upon which relief may be granted, and the motion to amend should be denied as futile.

## ARGUMENT

### I.    Standard of Review

A motion to amend a complaint may be denied if the amendment would be futile. *See Adorno v. Crowley Towing and Transp. Co*., 443 F.3d 122, 126 (1st Cir. 2006). When an amendment is futile and would "serve no legitimate purpose," the Court "should not needlessly prolong matters." *Hatch v. Dept. for Children Youth and Their Families*, 274 F.3d 12, 19 (1st Cir. 2001) (quoting *Correa-Martinez v. Arrillaga-Belendez*, 903 F.2d 49, 59 (1st Cir. 1990)). "In assessing futility, the district court must apply the standard which applies to motions to dismiss under Fed. R. Civ. P. 12(b)(6)." *Adorno*, 443 F.3d at 126. That is, the motion should be denied as futile if the proposed amended complaint fails to state a claim upon which relief may be granted. *See Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996).

It is well-settled that a complaint fails to state a claim if the facts alleged do not "plausibly narrate a claim for relief." *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012). The factual allegations alleged in a complaint must be accepted as true, but conclusory legal conclusions may be disregarded. *See id.* A complaint will not survive "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct[.]" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

### II.    Plaintiff's Motion to Amend the Complaint to Add 42 U.S.C. § 1983 Claims is Futile

The proposed SAC includes three claims for relief under 42 U.S.C. § 1983, including Count I against both Defendants for "stigma plus," Count II against both Defendants for an equal protection violation based on gender discrimination, and Count III against only the City for an

equal protection violation based on race discrimination.[3] Each of these claims fail.[4] First, the claims fail as alleged against the City because there is no municipal liability under a *respondeat superior* theory for violations of § 1983. Second, the claims fail as alleged against the Acting Mayor, because the Acting Mayor is immune from suit. Finally, Counts II and III fail for the independent reason that, even if a claim could be brought against Defendants, Plaintiff fails to allege any constitutional violation.

### A.  The City is not liable under the § 1983 claims alleged by Plaintiff.

Plaintiff's proposed claims under § 1983 are not actionable against the City. With respect to § 1983 actions, "there can be no municipal liability under a respondeat superior theory." *Fabiano v. Hopkins*, 352 F.3d 447, 452 (1st Cir. 2003) (citing *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 690-95 (1978)). Instead, to establish liability against a municipality under § 1983, a plaintiff "must prove deprivation of a constitutional right by means of 'the execution of the government's policy or custom.'" *Id.* "Absent evidence of an unconstitutional municipal policy, a single incident of misconduct cannot provide the basis for municipal liability under § 1983." *Id. See also St. Hilaire v. City of Laconia*, 71 F.3d 20, 29 (1st Cir. 1995) (single incident not sufficient to establish "custom or usage" of the municipality as required for § 1983 action).

Plaintiff does not point to any City "policy" which resulted in his termination. Instead, his claim is based on a single incident—his termination. *See* SAC ¶¶ 144, 153, 160. Plaintiff does not allege that the City engaged in a practice of terminating employees, or subjecting employees

---

[3]  Significantly, Plaintiff brings his race discrimination claim in Count III (and his race discrimination claims under Chapter 151B) only against the City, and not the Acting Mayor. Plaintiff apparently believed it would be even less plausible to claim that Acting Mayor Janey—the City's first Black mayor—discriminated against him because he is Black. However, the same would be true with respect to Plaintiff's claim against the City where, in terminating Plaintiff, the City acted through the Acting Mayor.

[4] Plaintiff's request for a "name clearing" hearing, which is styled as Count XVI, should also be dismissed because Plaintiff's stigma-plus claim fails as a matter of law.

to investigations, on the basis of any improper purpose.  In fact, the entire premise of Plaintiff's equal protection claims is that he was treated *differently* than others had been treated per the City's custom. *See id.* at ¶¶ 149, 151, 159. Because Plaintiff has not—and cannot—allege any City policy or custom, his claim cannot survive. The City simply cannot be liable for an isolated act of a City employee. *See Fabiano*, 352 F.3d at 452 (holding that where "the decision to terminate [plaintiff's] employment ultimately resided with [the mayor]," and plaintiff did "not point to any relevant city 'policy' beyond the mere fact that [the mayor] decided to fire him," the single incident of alleged misconduct could not provide the basis for municipal liability under § 1983). Thus, Counts I, II, and III of the proposed SAC are all futile as alleged against the City.

**B.  The Acting Mayor is immune from suit under § 1983.**

Plaintiff's § 1983 claims in Counts I and II also fail as alleged against the Acting Mayor. Government employees sued in their official capacities have immunity from suit for monetary damages under § 1983. *See Oberg v. City of Taunton*, 972 F. Supp. 2d 174, 193-94 (D. Mass. 2013). Here, Plaintiff is suing the Acting Mayor in her official capacity. *See, e.g.*, SAC ¶¶ 15, 130 ("At all relevant times, the Acting Mayor was acting as an official of the City of Boston."), 133 ("The Acting Mayor distributed the investigative report to the public on behalf of the City."), 168 ("At all relevant times, the Acting Mayor was acting within the scope of her position with the City of Boston."). Thus, the Acting Mayor is immune from suit for monetary damages and the claims against her in proposed Counts I and II are futile.

To the extent Plaintiff may claim he is suing the Acting Mayor in her individual capacity (notwithstanding the clear, express allegations to the contrary), Counts I and II still fail, because the Acting Mayor is entitled to qualified immunity. Qualified immunity "provides defendant public officials an immunity from suit and not a mere defense to liability. For this reason,

immunity is to be resolved at the earliest possible stage in litigation." *Maldonado v. Fontanes*, 568 F.3d 263, 268 (1st Cir. 2009) (citations omitted).

"[G]overnment officials performing discretionary functions generally are granted a qualified immunity and are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (citations omitted). The doctrine of qualified immunity is intended to protect public officials and allow them to act "without fear of retributive suit for damages except when they should have understood that particular conduct was unlawful." *Limone v. Condon*, 372 F.3d 39, 44 (1st Cir. 2004). To determine whether a public official is entitled to qualified immunity, a court must decide "whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right" and, if so, "whether the right was 'clearly established' at the time of the defendant's alleged violation." *Maldonado*, 568 F.3d at 269. As explained in Section II.C., *infra*, Plaintiff fails to allege a violation of a constitutional right. Plaintiff's conclusory assertion that the Acting Mayor treated him differently because of his gender has no support. The allegations in the proposed SAC make clear that Plaintiff was subjected to an investigation in response to the serious allegations raised against him, and that he was terminated because of the uncertainty surrounding those allegations, and the poor judgment Plaintiff showed throughout the investigation. Thus, the qualified immunity analysis can end at step one.

However, the qualified immunity analysis also fails at step two, because Plaintiff does not allege that the Acting Mayor violated any "clearly established" law. The "salient question" with respect to "clearly established law" is "whether the state of the law at the time of the alleged violation gave the defendant fair warning that his particular conduct was unconstitutional." *Id*. The Supreme Court has emphasized that the "clearly established law" inquiry "must be

undertaken in light of the specific context of the case, not as a broad general proposition." *See Mullenix v. Luna*, 577 U.S. 7, 12 (2015). "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (citations omitted).

The Acting Mayor's actions in this case were anything but "plainly incompetent" or contrary to law. The Acting Mayor—presented with the serious allegations of domestic violence against Plaintiff—acted swiftly to ensure completion of the independent investigation. The process and conclusion of that investigation revealed Plaintiff's poor judgment and inability to lead the BPD. Accordingly, the Acting Mayor terminated Plaintiff pursuant to her statutory authority, providing him with the notice and hearing required by the Removal Statute. Under these circumstances, where the Acting Mayor followed the letter of state law, there can be no plausible claim for a violation of clearly established law. Therefore, the Acting Mayor is immunized from suit under the qualified immunity doctrine.

### C. Plaintiff's § 1983 claims in Counts II and III are futile because Plaintiff fails to allege any constitutional violation.

To the extent Plaintiff's proposed claims are not barred by Defendants' immunity from suit, they are nonetheless futile because Plaintiff fails to state a claim under § 1983 for an equal protection violation based on either race or gender. There are two theories under which Plaintiff could have attempted to plead a claim. First, he could have alleged that a government custom or policy caused his injury. As explained above, Plaintiff does not identify any City policy or custom that led to his alleged deprivation of a constitutional right. Second, a plaintiff may assert an equal protection claim by alleging that he was "treated selectively and in a subpar manner based on impermissible considerations." *Alston v. Town of Brookline*, 997 F.3d 23, 41 (1st Cir. 2021). "Plaintiffs claiming an equal protection violation must first identify and relate *specific instances* where persons *situated similarly in all relevant aspects* were treated differently[.]"

*Ayala-Sepulveda v. Mun. of San German*, 671 F.3d 24, 32 (1st Cir. 2012) (emphasis in original). Plaintiff has failed to do so.

Plaintiff broadly claims that Defendants treated him "in a discriminatory manner based on his sex," and that the City "has never treated a white Commissioner" in the same manner. SAC ¶¶ 144, 158. But he does not, and cannot, allege that any non-Black or non-male BPD Commissioner was accused of something as serious as domestic violence and was not subjected to an investigation. Nor does he allege that any non-Black or non-male BPD Commissioner failed to fully cooperate with such an investigation. The distinctions surrounding Plaintiff's situation—his high rank, the seriousness of the allegations, and his failure to appreciate the seriousness of those allegations—are "differentiating … circumstances" that place him in a category unlike Ms. Mason or the "other commissioners" he vaguely references. *See Alston*, 997 F.3d at 41 (a plaintiff must identify persons similarly situated in aspects including "job performance, qualifications and conduct, without such differentiating or mitigating circumstances that would distinguish their situations" (citations omitted)). Plaintiff's failure to make an allegation identifying a specific instance of any person similarly situated dooms his equal protection claims. *See Pollard v. Georgetown Sch. Dist.*, 132 F. Supp. 3d 208, 222-23 (D. Mass. 2015) (dismissing on a Rule 12(b)(6) motion equal protection claim where plaintiff alleged child was treated different than "other students" but did not allege any facts to establish that those other students were similarly situated). Thus, Counts II and III are futile.

## III.    Plaintiff's Motion to Add an MCRA Claim is Futile

### A.  Plaintiff's MCRA claim fails because neither the City nor the Mayor may be sued pursuant to the statute.

In Count IV of his proposed SAC, Plaintiff purports to bring a claim for violation of the Massachusetts Civil Rights Act (M.G.L. c. 12, § 11I) (the "MCRA") against the City and Acting

Mayor. These claims are not cognizable against either defendant. First, the claim fails against the City because a municipality is not a "person" under the MCRA. *Arroyo v. City of Boston*, No. 20-cv-12082-DJC, 2021 WL 2338879, *8 (D. Mass. June 8, 2021) (dismissing MCRA claim against city). Second, the claim fails against the Acting Mayor because "a municipality cannot be sued under the MCRA and an MCRA claim against … a Mayor in [her] official capacity is a claim against the municipality." *Wilson v. Town of Fairhaven*, No. 18-11099-PBS, 2019 WL 1757780, at *15 (D. Mass. Mar. 4, 2019) (quoting *Fletcher v. Szostkiewicz*, 190 F. Supp. 2d 217, 230 (D. Mass. 2002)). As explained above, Plaintiff is suing the Mayor in her official capacity. *See, e.g.*, SAC ¶ 168 ("At all relevant times, the Acting Mayor was acting within the scope of her position with the City of Boston."). Therefore, the MCRA claim is futile as to both Defendants.

**B. Even if an MCRA claim could legally be raised against Defendants, Plaintiff fails to allege a violation of the MCRA.**

It would also be futile for Plaintiff to amend his complaint to sue the Acting Mayor for violating the MCRA in her individual capacity. To state a claim under the MCRA, a plaintiff must show "that (1) his exercise or enjoyment of rights secured by the Constitution or laws of either the United States or of the Commonwealth, (2) has been interfered with, or attempted to be interfered with and (3) that the interference or attempted interference was by threats, intimidation, or coercion." *Cummings v. City of Newton*, 298 F. Supp. 3d 279 (D. Mass. 2018). The proposed SAC alleges that the Acting Mayor "interfered by threats, intimidation, or coercion" with Plaintiff's "constitutionally protected property and liberty interest in his position as Commissioner and in his reputation." SAC ¶¶ 165,167. But the proposed SAC fails to identify any "threats, intimidation, or coercion." Instead, Plaintiff states that the Acting Mayor "asked that [Plaintiff] resign or retire as the Commissioner," that "[u]pon [Plaintiff] declining her request, she then stated her intent to terminate him from his position," and that shortly thereafter,

12

the Acting Mayor released the investigative report to the public. *Id.* at ¶ 169.  None of these

allegations amount to actionable "threats", "coercion", or "intimidation."

A threat "involves the intentional exertion of pressure to make another fearful or

apprehensive of injury or harm." *Cummings*, 298 F. Supp. 3d at 289. Intimidation "involves

putting in fear for the purpose of compelling or deterring conduct," and coercion is "the

application to another of such force, either physical or moral, as to constrain him to do against

his will something he would not otherwise have done." *Id.* This is not what the proposed SAC

alleges. Plaintiff does not allege that the Acting Mayor threatened to release the Report in order

to force Plaintiff to resign, or released the Report to coerce Plaintiff to resign. *See* SAC ¶¶ 102-

03, 107. Instead, Plaintiff merely claims that the Acting Mayor asked him to "resign or retire."

That statement is not actionable. Massachusetts courts require "'a pattern of harassment and

intimidation' to support a finding of non-physical coercion under the MCRA." *Thomas v.*

*Harrington*, 909 F.3d 483, 493 (1st Cir. 2018) (quoting *Howcroft v. City of Peabody*, 51 Mass.

App. Ct. 573 (2001)). "[B]y itself, a threat to use lawful means to reach an intended result is not

actionable[.]" *Id.* (quoting *Buster v. George W. Moore, Inc.*, 438 Mass. 635 (2003)).

In a similar case, a police officer working for the Salisbury Police Department ("SPD")

was asked to "resign or be fired" after an investigation revealed that he was "moonlighting as [a]

practicing attorney[]" in violation of SPD policy. *Thomas*, 909 F.3d at 493. There, the plaintiff

claimed that defendant coerced him by releasing the investigatory report to a local newspaper,

and disclosing it to the Massachusetts Board of Bar Overseers. *Id.* The court held that "these

events hardly evince a 'pattern of harassment and intimidation' geared towards coercing

[plaintiff's] resignation from the SPD." *Id.* Similarly, the Acting Mayor's release of the

Investigator's Report does not amount to a "pattern of harassment or intimidation." By asking

Plaintiff if he would "resign or retire," the Acting Mayor was not "threatening" Plaintiff, but

13

merely laying out his potential options.[5] *See Mason v. Central Mass. Transit Mgmt./Worcester Regional Transit Auth.*, 394 F. Supp. 3d 166, 174 (D. Mass. 2019) (dismissing MCRA claim where plaintiff did not allege pattern of harassment or intimidation and finding that employer's statement "resign or be fired" "simply highlighted plaintiff's options"). Plaintiff fails to state a claim under the MCRA, and his proposed amendment is futile.

### C. Plaintiff's MCRA claim fails for the independent reason that Chapter 151B is the exclusive remedy for employment discrimination claims.

The Massachusetts Supreme Judicial Court (the "SJC") has held that Chapter 151B provides the "comprehensive and exclusive statutory scheme for resolving employment discrimination claims under Massachusetts law." *Ahanotu v. Mass. Tpk. Auth.*, 466 F. Supp. 2d 378, 388-89 (D. Mass. 2006) (citing *Green v. Wyman-Gordon Co.*, 422 Mass. 551, 557-58 (1996)). Plaintiff's MCRA claim is simply another attempt at relief for what he considers employment discrimination. The appropriate, and exclusive, vehicle for such a claim is Chapter 151B. *Id.* ("[W]here c. 151B applies, a person may not evade its procedural requirements by recasting a discrimination claim as a violation of . . . the civil rights act."). Because Chapter 151B is the exclusive remedy for discrimination claims, Plaintiff fails to state a claim upon which relief can be granted, and his MCRA claim is futile.

## IV.   Plaintiff Fails to State a Defamation Claim Against the Mayor

### A. The Mayor's statements were protected by the conditional privilege.

Plaintiff's defamation claim also fails. Under Massachusetts law, "[s]tatements made by public officials while performing their official duties are conditionally privileged." *Burke v. Town of Walpole*, 405 F.3d 66, 94 (1st Cir. 2005) (quoting *Mulgrew v. Taunton*, 410 Mass. 631

---

[5] An employer giving an employee the option to resign prior to termination is commonplace. Laying out this option is not a "threat" made in bad faith, but in fact demonstrates good faith on the part of the employer who is giving the employee the opportunity to resign rather than face the penalty of termination. *See, e.g.*, *Mason*, 394 F. Supp. 3d at 174.

(1991)). This privilege is "designed to allow public officials to speak freely on matters of public importance in the exercise of their official duties." *Id.* (quoting *Draghetti v. Chmielewski*, 416 Mass. 808 (1994)). "Determining whether a conditional privilege is appropriate requires balancing of 'the interest of the defamed person in the protection of his reputation against the interests of the publisher, of third persons[,] and of the public in having the publication take place." *Id.* (quoting Restatement (Second) of Torts § 598A (1977)).

Plaintiff's interest in the protection of his reputation is diminished by the fact that the allegations against him had already been published in the Boston Globe before the Investigator's Report was released by the Acting Mayor. SAC ¶ 25. The public, on the other hand, had a strong interest in hearing about the conclusion of an investigation into serious allegations of domestic abuse raised against the Commissioner of the City's police department (based on allegations made public by the Boston Globe). The public undoubtedly has a right and need to know about the alleged criminal conduct of a police officer, especially when that officer is the leader of the police department. *See Mulgrew*, 410 Mass. at 635 (extending the privilege to statements made by a police chief to a city council committee about a police officer because "[t]he public has an interest in having a police force comprised of competent and able individuals"). And the public reasonably looked to the Acting Mayor for information regarding these important issues. Balancing these interests, it is clear that the Acting Mayor should be afforded the protection of a conditional privilege to "comply[] with [her] official duties when those duties include the need to make statements on important issues." *Landry v. Mier*, 921 F. Supp. 880, 888 (1st Cir. 1996).

A conditional privilege may only be overcome if a plaintiff can show "unnecessary, unreasonable or excessive publication" or that the defendant acted with "actual malice." *Id.* "The plaintiff bears the burden of establishing abuse of the conditional privilege by 'clear and convincing' evidence." *Id.* Plaintiff fails to make any allegations to this effect, nor could he. To

show actual malice, Plaintiff must allege that the Acting Mayor published the report and/or made statements knowing that the statements were false, or with a reckless disregard for their truth or falsity. *See Edwards v. Commonwealth*, 477 Mass. 254, 263 (2017). "Reckless disregard requires more than negligence; a plaintiff must prove that the individual making the alleged defamatory statement entertained serious doubts as to the truth of the statement." *Id.* (citations omitted) (dismissing defamation claim where complaint failed to allege actual malice).

At the motion to dismiss stage, the Court must determine "whether [Plaintiff] has 'la[id] out enough facts from [which] malice might reasonably be inferred,' such that his allegations 'nudge[] his actual malice claim across the line from conceivable to plausible.'" *Arroyo*, 2021 WL 2338879, at *6 (dismissing defamation claim on 12(b)(6) motion where plaintiff failed to allege actual malice); *see also Edwards*, 477 Mass. at 265 ("Not only is '[p]roving actual malice a heavy burden,' … but in the era of [*Ashcroft v. Iqbal*] and *Twombly*, pleading actual malice is a more onerous task as well." (quoting *Biro v. Condé Nast*, 963 F. Supp. 2d 255 (S.D.N.Y. 2013)). Plaintiff does not make any allegation from which the Court could infer that the Acting Mayor acted recklessly in releasing the Investigator's Report. The allegations underlying the report were, without question, allegations that had been made on record. The Boston Globe reported on the allegations. And the *independent* investigator conducted a months-long investigation (commencing before the Acting Mayor even took office), during which she interviewed numerous witnesses, including Plaintiff. In fact, the Investigator's Report—unlike the initial Globe article—included Plaintiff's side of the story. The Acting Mayor's reliance on the accuracy of the independent and thorough report cannot plausibly be called "reckless."

Additionally, Plaintiff does not make any allegation of "unnecessary, unreasonable, or excessive" publication. *See Burke*, 405 F. 3d at 95. Accordingly, Plaintiff cannot state a claim for defamation, and his motion to amend should be denied with respect to this claim.

**B.   Even if the conditional privilege did not apply, Plaintiff fails to state a claim
for defamation.**

Even if the conditional privilege did not apply, Plaintiff fails to state a defamation claim.

Under Massachusetts law, a police officer is a "public figure." *See Rotkiewicz v. Sadowsky*, 431

Mass. 748, 752-53 (2000). As a public figure, to state a claim for defamation, Plaintiff must

allege actual malice. *Id.* As explained above, Plaintiff has not alleged that the Acting Mayor

made any statement, or released the report, with actual malice. Thus, his defamation claim fails.

Moreover, assuming for the sake of argument that Plaintiff did allege the Acting Mayor

acted with malice (he does not), the allegedly defamatory statements at issue here are not

actionable. The statements that the Acting Mayor made in connection with releasing the

Investigator's Report were statements of "pure opinion." "Whether a statement is a factual

assertion or an opinion is a question of law 'if the statement unambiguously constitutes either

fact or opinion,' and a question of fact 'if the statement reasonabl[y] can be understood both

ways." *Arroyo*, 2021 WL 2338879, at *7 (quoting *Scholz v. Delp*, 473 Mass. 242, 250 (2015)).

A "statement that does not contain 'objectively verifiable facts' is not actionable." *Id.*

In *Arroyo*, the court held that a mayor's statements regarding the administration's

approach to sexual harassment claims, and the actions the city had taken in response, were not

statements of fact regarding the specific allegations against plaintiff, even where they were made

in response to inquiries about plaintiff. *Id.* Instead, the statements were the mayor's "opinion

regarding his administration's response to this type of complaint and the allegations against

[plaintiff]." *Id.* The statements made by the Acting Mayor here fall into exactly the same

category. The proposed SAC alleges that the Acting Mayor stated "I will not turn a blind eye to

domestic violence against Black women, or any women, for that matter." SAC ¶ 111. This

statement is not defamatory. Like the statements in *Arroyo*, the Acting Mayor's statements

reflected her opinion regarding the administration's response to the allegations against Plaintiff. These statements are not actionable, and thus, Plaintiff fails to state any plausible claim for defamation.

## V.     Plaintiff Fails to State a Claim That Defendants Violated the Removal Statute

Plaintiff does not assert any basis for believing that he can bring a private action for an alleged violation of Chapter 322, Section 7, of the Acts of 1962 (the "Removal Statute"). In fact, he cannot. The SJC has "generally been reluctant to infer a private cause of action from a statute in the absence of some indication from the Legislature supporting such an inference." *Anzalone v. Admin. Office of Trial Ct.*, 457 Mass. 647, 654 (2010) (quoting *Loffredo v. Ctr. for Addictive Behaviors*, 426 Mass. 541, 544 (1998)). Nothing in the Removal Statute reflects any legislative intent to subject the City or the Acting Mayor to private actions for violating the statute's requirements. Thus, Plaintiff's proposed amendment is futile. *See Mass. Inst. of Tech. v. Rsch., Dev. & Tech. Emps. Union,* 980 F. Supp. 2d 8, 13 (D. Mass. 2013) ("[Q]uestions of statutory interpretation are questions of law ripe for resolution at the pleadings stage.").

In any event, Plaintiff fails to allege that Defendants violated the Removal Statute. The Removal Statute provides that the Mayor may remove the Commissioner of the BPD "for cause" and "after notice and a hearing." *See* Removal Statute. As the Superior Court held when denying Plaintiff's motion for preliminary injunction, and the Single Justice of the Appeals Court affirmed, the notice and hearing provided to Plaintiff were sufficient, and there could be no violation based on procedure. *See* Dkt. 1-1 at 349-50, 359 ("The City's actions to date, offer to hold a hearing if a preliminary injunction does not issue, and assurance that a final decision has not yet been reached and will not be reached before the hearing, in combination, satisfy the requirements of the Removal Provision and the process due to the Commissioner.").

Nor has Plaintiff alleged a violation of the "for cause" requirement. Interpreting a similar statute, the SJC held that the "for cause" standard "reflects a legislative intention to allow [the actor with authority to terminate] to exercise his good professional judgment in making personnel decisions relative to subordinate appointed officials." *McSweeney v. Town Manager of Lexington*, 379 Mass. 794, 798 (1980). "Cause" includes "any ground asserted in good faith which is not arbitrary, irrational, unreasonable or irrelevant" to the task of the appointing authority. *Id.* It is not the court's place to second-guess the decisions of the Acting Mayor where those decisions were within her discretion and authority granted by the Legislature. *See Hogan v. Collins*, 183 Mass. 43, 46 (1903) (where commissioner was removed by mayor pursuant to statute permitting removal "for cause," stating "[t]he decision of the mayor, upon the evidence before him . . . is not open to revision here, either to pass upon the weight of the evidence or to determine whether the evidence justified that finding").

In *McSweeney*, the relevant statute provided that "The town manager shall appoint . . . a superintendent of public works" and that "any person so appointed . . . may be removed by the appointing authority for cause . . . ." 379 Mass. at 796. There, the SJC held that under the "for cause" standard, a town manager could exercise his discretion to terminate officials "in whose competency and efficiency he has less than complete confidence, so long as he does not abuse his discretion or exercise it in an arbitrary or capricious manner." *Id.* at 798; *see also Flomenbaum v. Commonwealth,* 451 Mass. 740, 746–47, (2008) (allowing motion to dismiss and holding that that the Governor's "conclusion that the interests of the public require the removal of the public officer," or his "less than complete confidence" in a public officer's "competency and efficiency" are sufficient to satisfy the "cause" standard).

Here, the Removal Statute gives the Mayor authority to remove the BPD Commissioner "for cause" and "after a hearing." *See* Removal Statute. Acting Mayor Janey and the City issued

19

a termination letter setting forth multiple reasons for Plaintiff's termination. *See* Ex. 4. As the facts before the Court make clear, the Acting Mayor had a good faith basis to determine that Plaintiff could not remain head of the BPD given viable allegations that he had violated the law, and his poor judgment throughout the investigation. *See* Ex. 1 at 5-6, 8-10, 15-16 (detailing allegations of abuse and Plaintiff's failure to fully cooperate with the investigation); Ex. 4 (stating that "the allegations and evidence create a cloud of uncertainty about the events and as a result, your fitness to lead the BPD" and citing Plaintiff's response to the investigation as demonstrating Plaintiff's "total lack of the insight, leadership, and judgment required" to lead the BPD); SAC ¶¶ 32-33, 36, 40 (demonstrating Plaintiff's failure to fully cooperate and his lack of appreciation for the seriousness of the allegations). The bases cited for removal are hardly "arbitrary, irrational, unreasonable or irrelevant." The Acting Mayor's "less than complete confidence" in Plaintiff was reason enough to terminate him. This Court should not accept Plaintiff's invitation to substitute its own judgment for the Acting Mayor's, and should not allow Plaintiff to bring this futile claim.

## VI.   Plaintiff Has Not Stated a Claim for Breach of Implied Contract

Plaintiff's breach of contract claim fails because there is no contractual relationship between Plaintiff and the City or the Acting Mayor. To state a claim for breach of contract under Massachusetts law, a plaintiff must allege that "a valid, binding contract existed, the defendant breached the terms of the contract, and the plaintiff sustained damages as a result of the breach." *Young v. Wells Fargo Bank, N.A.*, 717 F.3d 224, 232 (1st Cir. 2013) (citations omitted). Whether a contract exists is a matter of law for the Court to determine. *See Lexington Ins. Co. v. All Regions Chem. Labs, Inc.*, 419 Mass. 712, 713 (1995). Here, while the Removal Statute may provide Plaintiff with a property interest in his employment, it does not create a contract between

Plaintiff and the City, and it certainly does not create a contract between Plaintiff and the Acting Mayor.

Even if a contractual relationship did exist,[6] Plaintiff's conclusory assertion that he was terminated "without cause" is directly belied by the allegations in the proposed SAC and the documents attached thereto, as discussed in Section V, *supra*. For example, the Investigator's Report describes Plaintiff's admission that he engaged in "heated fisticuffs" with his 19-year old niece, and that he hit her "with a full swing of his arm and an open hand." Ex. 1 at 5. The Report also describes Plaintiff's failure to fully comply with the investigation, including his refusal to sit with the investigator for a follow-up interview, and his continued appearance at BPD headquarters throughout the investigation while he was on leave. *Id.* at 4-5. The Acting Mayor's letter to Plaintiff explains the reasons for Plaintiff's termination, including but not limited to, the "cloud of uncertainty about [the allegations] and as a result, [Plaintiff's] fitness to lead the BPD," Plaintiff's failure "to demonstrate an appreciation of the public concern around domestic violence or how those charges might affect the public's perception of [Plaintiff's] ability to lead the BPD," and Plaintiff's "lack of cooperation and judgment during the investigation." *See* Ex. 4. Plaintiff's own admissions in the SAC further demonstrate that the Acting Mayor's reasons for terminating him were sufficient. *See, e.g.*, SAC ¶¶ 75 ("the Court issued a restraining order against Mr. White"), 125 (acknowledging four visits to BPD headquarters while the investigation was ongoing), 36 (admitting refusal to answer all of the investigator's questions), 40 (refusal to meet with investigator for second interview). Simply put, the record does not support Plaintiff's

---

[6] Plaintiff also misrepresents the terms of the alleged contractual agreement. Plaintiff was not appointed with the expectation that he would be "employed for a term of five years." SAC ¶ 193. The Removal Statute expressly provides that where there is a "vacancy" in the office of Commissioner, it "shall be filled for the balance of the unexpired term." Chapter 322, Sec. 7, Acts of 1962. Here, Plaintiff was appointed to fill a vacancy created by the retirement of William Gross, and there remained approximately one year left in the five-year term pursuant to the Removal Statute. *See* SAC ¶¶ 18, 22, 24.

argument that he was terminated "without cause" or that the Acting Mayor's reasons for

terminating him "lack merit." SAC ¶¶ 123-28. The standard by which Plaintiff asks this Court to

measure "cause" is far stricter than the law requires.

The standard by which "cause" is measured in the termination of employees includes

"any grounds for discharge reasonably related, in the employer's honest judgment, to the needs

of his business, a dispute over policy about which there may be an honest difference of opinion,"

or, as here, the Acting Mayor's "conclusion that the interests of the public require the removal of

the public officer, or less than complete confidence in a public official's competency and

efficiency." *Flomenbaum*, 451 Mass. at 746-47 (citations omitted). In *Flomenbaum,* the SJC

affirmed dismissal of a breach of contract claim[7] by a terminated Chief Medical Examiner

against the Governor at the motion to dismiss stage, finding that "cause was sufficiently

established to support the Governor's decision to remove the plaintiff from office." *Id*. at 752.

Here too, the Independent Investigator's Report, the Termination Letter, and Plaintiff's own

admissions regarding his conduct demonstrate that the Acting Mayor had cause to terminate

Plaintiff. Accordingly, the proposed SAC fails to state a claim for breach of implied contract.

## VII.   **Plaintiff Has Not Stated a Claim for Breach of the Covenant of Good Faith and Fair Dealing**

Plaintiff's claim for breach of the covenant of good faith and fair dealing also fails

because no contract existed between Plaintiff and Defendants. Massachusetts law implies a

covenant of good faith and fair dealing in every contract which requires that "neither party [to

the agreement] shall do anything that will have the effect of destroying or injuring the right of

---

[7] In *Flomenbaum*, the Court found that a letter from the Secretary of Public Safety constituted a "contract" for purposes of analyzing the contract claim, but held that the statutory power of the Governor to remove the Chief Medical Examiner for "cause" was the controlling standard for the breach of contract claim. 451 Mass. at 746-47.

the other party to enjoy the fruits of the contract." *Anthony's Pier Four, Inc. v. HBC Assoc.*, 411 Mass. 451, 471 (1991). "The covenant is preserved so long as neither party injures the rights of another to reap the benefits prescribed by the terms of the contract." *Uno Rests., Inc. v. Boston Kenmore Realty Corp.*, 441 Mass. 376, 385 (2004).

It is well-settled that "the scope of the covenant is only as broad as the contract that governs the particular relationship." *Ayash v. Dana-Farber Cancer Inst.*, 443 Mass. 367, 385 (2005). Accordingly, a claim for breach of the covenant of good faith and fair dealing exists only where there is an enforceable contract between the parties. *Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 412 F.3d 215, 230 (1st Cir. 2005) ("[W]ithout a contract, there is no covenant to be breached."). Moreover, its violation usually requires more than a simple breach of contract. *Targus Grp. Int'l, Inc. v. Sherman,* 76 Mass. App. Ct. 421, 435 (2010).

As described in Section VI *supra*, Plaintiff did not have a contract of employment. To the extent the Court finds an implied contract existed, as the Plaintiff alleges in his proposed SAC, such a contract would be with the City, not the Acting Mayor. SAC ¶ 198 ("the contract between the City and Mr. White"). Accordingly, while neither defendant breached the covenant of good faith and fair dealing, Plaintiff's claim against the Acting Mayor, at least, fails as a matter of law because Plaintiff has failed to allege the existence of a contractual relationship between Plaintiff and the Acting Mayor. *See Ossinger v. City of Newton,* 26 Mass. App. Ct. 831 (1989); *Saltzman v. Town of Hanson,* 935 F. Supp. 2d 328, 348-49 (D. Mass. 2013).

Moreover, Plaintiff simply fails to state a claim for breach of the covenant of good faith and fair dealing against either defendant. Plaintiff asserts that Defendants breached the covenant by terminating him without cause, treating him in an unfair and defamatory manner, failing to pay him certain compensation owed, and barring him from returning in any capacity as a BPD employee. SAC ¶ 199. But as stated above in Sections IV, V, and VI, Plaintiff's allegations do

not state a claim for defamation, and Plaintiff was not terminated without "cause." Further, Plaintiff did not allege that he had a contract that provided him with the right to return to the BPD, or to receive compensation that he did not receive. Thus, any claim based on the alleged right to receive those benefits fails as well. Plaintiff cannot use the implied covenant to create contract terms which never existed. *Uno Rests., Inc.*, 441 Mass. at 385; *McAdams v. Mass. Mut. Life Ins. Co.*, 391 F.3d 287, 301 (1st Cir. 2004) (stating that the "purpose of the covenant is not to add terms to a contract; indeed, it may not do so").

Finally, Plaintiff's claim also fails as a matter of law because none of the allegations in the proposed SAC amount to conduct that involves "bad faith . . . implicating a dishonest purpose, consciousness of wrong, or ill will in the nature of fraud." *Targus Grp. Int'l*, 76 Mass. App. Ct. at 435 (quoting *Equip. & Sys. for Indus., Inc. v. Northmeadows Constr. Co.,* 59 Mass. App. Ct. 931, 932-33 (2003)). "[N]ot every breach of contract is a breach of the implied covenant of good faith and fair dealing. . . . [R]ecovery . . . requires conduct taken in bad faith either to deprive a party of the fruits of labor already substantially earned or unfair leveraging of the contract terms to secure undue economic advantage." *Christensen v. Kingston Sch. Comm.,* 360 F. Supp. 2d 212, 226 (D. Mass. 2005). In the employment context, "[a] mere finding that there was no good reason for the termination in the absence of other indicia of lack of honesty or taking unfair advantage; or bad faith, is insufficient to support a claim." *See id.* at 227 (quoting *Piantes v. Pepperidge Farm, Inc.,* 875 F. Supp. 929, 938 (D. Mass. 1995)).

No allegations in the proposed SAC rise to the level of an improper motive by either the Acting Mayor or the City under the law (because no such improper motive existed). Plaintiff's allegations are no more than mere speculations and do not sufficiently allege a lack of good faith on the part of the Defendants. *See Siles v. Travenol Labs., Inc.,* 13 Mass. App. Ct. 354, 358 (1982) (citing *Gram v. Liberty Mut. Ins. Co.,* 384 Mass. 668, 671-72 (1981)) (the "absence of

good cause . . . does not by itself give rise to an enforceable claim for breach of a condition of good faith and fair dealing"). Accordingly, Count VIII fails to state a claim for breach of the covenant of good faith and fair dealing and the amendment should be denied as futile.

## VIII.   Plaintiff Fails to State a Claim for Violation of His Right to Privacy

Plaintiff's claim that Defendants violated his right to privacy by disclosing the Investigator's Report and making statements to the public in connection thereto fails as a matter of law. Defendants did not release the allegations against Plaintiff to the public—the Boston Globe did. SAC ¶ 25. Once these serious allegations regarding the fitness of the Commissioner of the BPD were brought to Defendants' attention and were in the public domain, Defendants had every right—indeed, the duty—to keep the public informed.

To state a claim for an "unreasonable, substantial or serious interference with [an individual's] privacy" pursuant to M.G.L. c. 214, § 1B, "the invasion must be both unreasonable and substantial or serious." *Nelson v. Salem State Coll.*, 446 Mass. 525, 536 (2006) (citing M.G.L. c. 214, § 1B). It also requires an intentional disclosure of "facts of a private nature" made without any "legitimate, countervailing interest for the disclosure." *See Barrigas v. United States*, No. 17-cv-10232-ADB, 2018 WL 1244780, at *7 (D. Mass. Mar. 9, 2018) (citations omitted). Further, a plaintiff "must show that there was a gathering and dissemination of information which [he] contends was private." *Nelson*, 446 Mass. at 536 (citations omitted). "[T]here can be no invasion of privacy where the facts, though highly personal, are already in the public domain." *Taylor v. Swartwout,* 445 F. Supp. 2d 98, 103 (D. Mass. 2006). Moreover, "[w]hen the subject matter of the publicity is of public concern . . . there is no invasion of privacy." *Id.* (quoting *Ayash*, 443 Mass. at 382); *see also Shephard v. Bay Windows, Inc.*, No. 01-0284, 2003 Mass Super. LEXIS 277, at *31 (Mass. Super. Ct. Sept. 22, 2003) ("Where the information is newsworthy, the disclosure is privileged, even if it would otherwise be of a private

and intimate nature." (citations omitted)). Massachusetts courts have taken a broad view as to what constitutes "newsworthy" information. "Information that is of 'genuine, even if more or less deplorable, popular appeal'" is "newsworthy," falling outside of any protected privacy right. *Peckham v. Boston Herald, Inc.*, 48 Mass. App. Ct. 282, 289 (1999) (quoting Restatement (Second) of Torts 652D *comment g* (1977)) (public figure's paternity lawsuit was "newsworthy").

The SJC has held, in the employment context, that it is necessary to balance the employer's legitimate business interest in obtaining and publishing personal information about an individual against the substantiality of the intrusion on the employee's privacy resulting from disclosure. *See Bratt v. Int'l Bus. Machs. Corp.*, 392 Mass. 508, 520-21 (1984). In connection with balancing the alleged intrusion against the employer's legitimate business interest, courts long have held that public employees have a diminished expectation in matters relating to their public employment. *See Hastings and Sons Publ'g Co. v. City Treasurer of Lynn*, 374 Mass 812, 818-20 (1978). This is particularly true for a high profile position such as BPD Commissioner.

Here, information concerning Plaintiff's fitness to serve as BPD Commissioner is outside the scope of the privacy statute. *See*, *e.g.*, *Martinez v. New England Med. Ctr. Hosps., Inc.*, 307 F. Supp. 2d 257, 267 (D. Mass. 2004) (disclosure of reasons why plaintiff was terminated fall "outside the scope" of privacy statute because "statements that are limited to issues regarding the plaintiff's fitness as a potential employee do not constitute an unreasonable interference with plaintiff's privacy"). Moreover, the proposed SAC itself demonstrates the "newsworthiness" of the information, noting that the Boston Globe first made public the domestic violence allegations at issue. SAC ¶ 25.[8] Where the allegations in the SAC demonstrate that the purportedly private

---

[8] Plaintiff alleges that information in personnel records is subject to an "absolute exemption" from disclosure, but the statutes regarding the mandatory disclosure of public records cited in the SAC are

information was already in the public domain as the result of the Boston Globe article, and the information allegedly disclosed is highly newsworthy and a matter of great public concern, the allegations in the SAC fall outside the scope of Chapter 214, § 1B, and Count IX fails as a matter of law.

## IX.      Plaintiff Fails to State a Claim for Discrimination Under M.G.L. c. 151B

Plaintiff seeks to bring six claims under M.G.L. c. 151B §§ 4(1), 4(3), 4(4), and 4(4A) for discrimination based on race and gender. As relevant to Plaintiff's proposed claims, Chapter 151B makes it unlawful to "discharge from employment . . . or to discriminate" against an employee on the basis of race or sex, to "print or circulate . . . any statement . . . which expresses . . . any limitation, specification or discrimination as to" race or sex, to "discharge, expel or otherwise discriminate against any person because he has opposed practices forbidden under [Chapter 151B] or because he has filed a complaint," and to "coerce, intimidate, threaten, or interfere with another person in the exercise or enjoyment of any right granted or protected by [Chapter 151B]." *See* Chapter 151B § 4. To establish a prima facie case of discrimination, a plaintiff must show "(1) [he is] a member of a protected class; (2) [he is] qualified for [his] job; (3) [he has] suffer[ed] an adverse employment action at the hands of [his] employer; and (4) [there is] some evidence of a causal connection between [his] membership in a protected class and the adverse employment action." *Higgins v. State Street Corp.*, 323 F. Supp. 3d 203, 206 (D. Mass. 2018) (quoting *Garmon v. Nat'l R.R. Passenger Corp.*, 844 F.3d 307 (1st Cir. 2016)).

---

inapposite to Plaintiff's violation of privacy claim. *See* M.G.L. c. 66, § 10 (defining documents subject to public records law) and M.G.L. c. 4, § 7, twenty-sixth (c) (defining personnel files as excluding records from mandatory disclosure that *may* constitute an unwarranted invasion of personal privacy" and specifically excluding "records related to a law enforcement misconduct investigation").

Each of Plaintiff's Chapter 151B discrimination claims fail for many of the same reasons that his equal protection claims fail, including that he fails to identify any person similarly situated who was treated differently, and that he fails to allege that Defendants acted with discriminatory intent. Plaintiff's conclusory assertion that he was discriminated against because he is a Black man[9] is insufficient to state a claim for relief. Allegations that "are too 'conclusory to remove the possibility of relief from the realm of mere conjecture' are insufficient to withstand a motion to dismiss[.]" *Araujo v. UGL Unicco-Unicco Operations*, 53 F. Supp. 3d 371, 383 (D. Mass. 2014) (citations omitted) (dismissing discrimination claim on 12(b)(6) motion where plaintiff provided no support for his position other than his own speculation that defendant's conduct was racially motivated). A plaintiff "must allege, at a minimum, facts showing that he was subjected to discrimination." *Id.* This requires "some evidence of a causal connection between [his] membership in a protected class and the adverse employment action." *Dick v. Wood Hole Oceanographic Inst.*, No. 21-cv-10007-DJC, 2021 WL 3146049, at *4 (D. Mass. July 26, 2021) (quoting *Garmon*, 844 F.3d at 313).

Plaintiff fails to allege any facts showing that he was subjected to discrimination, or to plausibly allege any causal connection between his race and gender and Defendants' decision to terminate him. *See* Chapter 151B (it is unlawful to discharge an employee "*because of*" race or sex (emphasis added)). Moreover, the facts alleged in the proposed SAC and documents incorporated therein demonstrate the valid reasons for Defendants' actions, including that Plaintiff was subjected to an investigation based on the serious allegations raised against him, and was terminated due to the findings in the investigation and Plaintiff's poor judgment

---

[9] The proposed SAC also alleges that Defendants discriminated against Plaintiff based on his "gender identity and sexual orientation." ¶ 211.Yet the SAC does not make a single allegation even identifying Plaintiff's "gender identity and sexual orientation."

throughout the investigation, which demonstrated that he was not fit to lead BPD. *See, e.g.*, Sections V and VI *supra*; Exs. 1-4. *See also McBride v. Mass. Comm'n Against Discrimination*, 677 F. Supp. 2d 357, 362 (D. Mass. 2009) (granting motion to dismiss claims for retaliation, harassment, disparate treatment and discrimination because, "although the record is sparse, it indicates valid reasons for [defendant]'s decision to terminate [plaintiff]'s employment"). Plaintiff has not—and cannot—allege that these bases were merely a pretext. Thus, Counts X to XV are futile and should not be allowed. *See Higgins*, 323 F. Supp. 3d at 207 ("It is not enough to allege that the plaintiff is a member of a protected class and was subject to an adverse employment action." (citations omitted)).

Further, Plaintiff's retaliation claims fail for the independent reason that the proposed SAC contains no allegation that Plaintiff engaged in any protected activity. Chapter 151B § 4(4) provides that it is unlawful "[f]or any person, [or] employer . . . to discharge, expel or otherwise discriminate against any person because he has opposed any practices forbidden under this chapter or because he has filed a complaint" with MCAD. "[T]o make out a prima facie case of retaliation, the plaintiff must show that he engaged in protected conduct, that he suffered some adverse action, and that a causal connection existed between the protected conduct and the adverse action." *Araujo*, 53 F. Supp. 3d at 382. Thus, because there is not a single allegation in the proposed SAC that Plaintiff engaged in "protected conduct," Plaintiff fails to state a claim for retaliation. *See id.* (dismissing § 4(4) claim where plaintiff did not complain about discrimination prior to the alleged adverse action).

Finally, Plaintiff fails to state a claim for violations of Chapter 151B § 4(3). While there is little case law interpreting this provision, this District has interpreted this section of the statute to prohibit "any inquiry with regard to employment that indicates the employer's intent to specify a preferred or required race, classify applicants according to race, or, more generally,

discriminate on the basis of race." *Gaines v. Boston Herald, Inc.*, 998 F. Supp. 91, 109 (D. Mass. 1998). Plaintiff does not allege anything of this sort. The proposed SAC's bare allegations with respect to these claims provide nothing more than a rehash of the statutory language: that is, that Defendants have "printed or circulated . . . a statement or publication and have made an inquiry or record in connection with [Plaintiff's] employment, which expresses, . . . discrimination as to his race" and "sex, gender identity, and sexual orientation." SAC ¶¶ 223, 241. Plaintiff does not identify the "statement or publication" which Defendants allegedly printed or circulated. *See id.* Given the sparsity of these allegations, it is impossible for Defendants to respond. To the extent Plaintiff's allegation is referring to the Investigator's Report, the Report simply does not "express . . . discrimination" as required by the statute.

## CONCLUSION

For the reasons described herein, Defendants respectfully request that the Court deny Plaintiff's motion for leave to amend as futile.

Dated: August 13, 2021                    Respectfully submitted,

**City of Boston and
Acting Mayor Kim Janey**

By their attorneys,

*/s/ Brian T. Kelly*
Brian T. Kelly (BBO No. 549566)
Kathleen C. Burns (BBO No. 670564)
Lauren A. Maynard (BBO No. 698742)
**NIXON PEABODY LLP**
53 State Street
Boston, MA  0210
(617) 345-1000
bkelly@nixonpeabody.com
kburns@nixonpeabody.com
lmaynard@nixonpeabody.com

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was filed electronically on August 13, 2021, and thereby delivered by electronic means to all registered participants as identified on the Notice of Electronic Filing.

*/s/ Brian T. Kelly*
Brian T. Kelly