UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
)
DENNIS WHITE, )
)
       Plaintiff, )
)
  v. )   Civil Action No. 1:21-CV-10952-LTS
)
CITY OF BOSTON and )
ACTING MAYOR KIM JANEY, )
)
       Defendants )
_____)

**DEFENDANTS' RESPONSE TO
PLAINTIFF'S SUPPLEMENTAL BRIEF**

Defendants City of Boston ("City") and Acting Mayor Kim Janey ("Janey") submit this supplemental memorandum regarding Plaintiff Dennis White's "stigma-plus" due process claim.[1] As set forth below, the allegations in the proposed complaint show that the City and Janey gave White all the constitutional process he was due under the circumstances. For that reason, the Court should deny White's Motion to Amend.

**ARGUMENT**

**I.    The Contours of the Name-Clearing Process Are Fact-Specific**

There are no prescribed requirements for a name-clearing hearing. All that is required is an opportunity "to allow the employee to clear his name of the false charges." *Wojcik v. Mass. State Lottery Comm'n.* 300 F.3d 92, 103 (1st Cir. 2002). "Compliance with formal procedures is not necessarily required." *Id.* As the Seventh Circuit noted, "the formality and procedural requisites for [a name-clearing] hearing may vary." *Endicott v. Huddleston*, 644 F.2d 1208, 1216 (7th Cir. 1980) (citations omitted). Name-clearing hearings demand only "that the person

---

[1]    The Court invited this supplemental briefing in its Order dated March 29, 2022 ("Order") (Dkt. 49).

have the right to support his allegations by argument, however brief, and if necessary, by proof, however informal." *Id.* (citations omitted). See also *Campbell v. Pierce Cty., Ga. By & Through Bd. of Comm'rs of Pierce Cty.*, 741 F.2d 1342, 1345 (11th Cir. 1984) ("[T]he features of such a [name-clearing] hearing itself have been prescribed with substantial flexibility"); *Gunasekera v. Irwin*, 551 F.3d 461, 470 (6th Cir. 2009) ("[A] court can tailor a name-clearing hearing which allows the employee to challenge directly any public stigma while also accounting for any legitimate concerns of the employer.").

As with all due process inquiries, courts must balance "the strength of the individual's interest, the risk of erroneous deprivation [of liberty], the probable value, if any, of requested additional procedures and the state's interest in providing (or not providing) those procedures." *Baden v. Koch*, 799 F.2d 825, 831 (2d Cir. 1986) (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1986)) (further citations omitted). Accordingly, courts take a case-by-case, fact-specific approach, and district courts have broad discretion to determine how to strike the correct balance. *See, e.g.*, *Gunasekera*, 551 F.3d at 471 ("[W]e leave to the district court the initial determination regarding the exact parameters of the name-clearing hearing"); *Lyons v. Barrett,* 851 F.2d 406, 411 (D.C. Cir. 1988) ("The discretion to tailor the conditions of a [name-clearing] hearing to a particular dismissal is properly vested in a district court."); *Doe v. U.S. Dep't of Justice,* 753 F.2d 1092, 1113 (D.C. Cir. 1985) ("[T]he district court will be required to determine the precise nature of the name-clearing procedure").

### A. Cross-Examination Is Not Required

Although White may wish it were otherwise, cross-examination is *not* a requirement of a name-clearing hearing. To Defendants' knowledge, neither the First Circuit nor any other Circuit has held that name-clearing hearings *must* include the right to cross-examine witnesses.

In fact, numerous courts have held that the right to cross-examination is *not* absolute, and depends on the totality of the circumstances. In *Boston v. Webb*, for example, the Fourth Circuit found that "[w]hile in some contexts . . . direct confrontation and the right to cross-examine one's accusers may be requisites of procedural due process, in other contexts and in respect of other interests they may not be." 783 F.2d 1163, 1166–67 (4th Cir. 1986). Relying on *Mathews*, the Court stated that "[w]hether these are requisites of procedural due process in a given case depends upon a balancing of the particular individual interest involved against the countervailing state interests." *Id*. "The right of cross-examination is therefore not an absolute in respect of all alleged deprivations of constitutionally protected property or liberty interests." *Id. See also Chilingirian v. Boris*, 882 F.2d 200, 206 (6th Cir. 1989) ("[Plaintiff's] failure to receive a hearing in the manner contemplated by him [*i.e.*, including cross-examination] does not alter the fact that he did indeed receive a hearing at which he was extended ample opportunity to clear his name. No more process is required."); *Miller v. Metrocare Servs.*, 809 F.3d 827, 833–34 (5th Cir. 2016) ("[W]e decline Miller's invitation to make confrontation of witnesses a mandatory requirement for an adequate name-clearing hearing.").[2]

Nor do the cases White cites state that cross-examination is required. In *Beitzell v. Jeffrey*, the First Circuit merely noted that the process the plaintiff received (which included cross-examination) complied with the Constitution. 643 F.2d 870, 879 (1st Cir. 1981). The Court did not rule that cross-examination was a *required* component of the hearing, or that without cross-examination, the plaintiff would have been entitled to further relief. *See also Doe*,

---

[2] White argues that *Baden*, where the Second Circuit held that cross-examination was not required, is distinguishable from the present case because White was terminated whereas Baden was merely demoted. If White is implying that cross-examination is required where employment is terminated, he is wrong. In all of the cases cited in this paragraph, the plaintiff was terminated. *See also Endicott*, 644 F.2d at 1216 (name-clearing hearing that did not include cross-examination sufficient where terminated employee was free to present his own evidence and witnesses and fully address the reasons for his non-reappointment, demonstrating that he "had a meaningful opportunity to be heard").

753 F.2d at 1112–14 (recognizing that name-clearing hearings must provide the opportunity to refute the stigmatizing statements "by cross-examination *or* independent evidence," and leaving it to the district court to determine the precise process owed) (emphasis added) (quotations and citations omitted). And where the cited authority did require cross-examination, the court made clear that the requirement was specific to the facts and circumstances of the case. *See Hostrop v. Bd. of Junior Coll. Dist. No. 515, Cook & Will Ctys., & State of Ill.*, 471 F.2d 488, 495 (7th Cir. 1972) ("We find that *the resolution of these interests* requires" certain procedures, including the chance to confront witnesses) (emphasis added).[3]

White's citation to *Goldberg v. Kelly* is particularly inapposite. In *Goldberg*, the Supreme Court held that welfare recipients must be given an opportunity to cross-examine witnesses in evidentiary hearings before their benefits are terminated. 397 U.S. 254, 269 (1970). The case was not about name-clearing hearings or even liberty interests. The fact that the Second Circuit in *Donato v. Plainview-Old Bethpage Cent. Sch. Dist.* cited to *Goldberg* is of no significance given that *Donato* stated that "[s]ince due process is a flexible notion, the procedural protection accorded a constitutional interest is determined by reference to the particular

---

[3] Although in his supplemental brief, White claims that he is suing under both the U.S. Constitution and the Massachusetts Constitution in Counts I and XVI, Pl.'s Supp. Br. at 3, n.2, Count I is based solely on 42 U.S.C. § 1983. Of course, § 1983 is not a cause of action for asserting a state constitutional right. And Count XVI seeks a remedy, and is not itself a separate cause of action. *Koufos v. U.S. Bank, N.A.*, 939 F. Supp. 2d 40, 46 (D. Mass. 2013), *amended in part* (July 1, 2013) ("An injunction is not a cause of action, but a remedy.") (citations omitted).
  Furthermore, these cases are distinguishable. In *Stetson v. Bd. of Selectmen of Carlisle*, the Supreme Judicial Court described in *dicta* what a name-clearing hearing should involve, including "*barring special considerations*, an opportunity to cross-examine those who charge him with any wrongdoing." 369 Mass. 755, 765, n.14 (1976) (emphasis added). *See also Fontana v. Comm'r of Metro. Dist. Comm'n*, 34 Mass. App. Ct. 63, 70, n.7, 72 (1993) (following the procedure outlined in *Stetson*, but noting that "[t]he precise form of name-clearing hearing to which an employee might be entitled under the constitution has been left open.") (quotations and citations omitted).

4

circumstances of a given case." 96 F.3d 623, 633 (2d Cir. 1996) (citing *Mathews*, 424 U.S. at 334).[4]

### B. A Public, Trial-Like Hearing is Not Required

White cites no authority stating that a public, trial-like hearing is required for due process. The closest White comes is citations to *Owen v. City of Ind.* and *Stetson*. Neither *Owen* nor *Stetson* support that proposition. *Owen* merely stated that a plaintiff has a right to a hearing to "publicly clear his name." 445 U.S. 622, 633, n.13 (1980) (citations omitted). *Stetson* only held the plaintiff's name-clearing hearing must occur before the Board of Selectmen, a body whose hearings are by nature public under Massachusetts law. 369 Mass. at 764. Like the right to cross-examination, the right to a public, trial-like hearing depends on the facts of each case. *See Gunasekera*, 551 F.3d at 471 ("[T]he university is required to offer Gunasekera a name-clearing hearing that is adequately publicized. . . . The exact nature of that publicity depends on a fact-intensive review of the circumstances attending his case"); *Baden*, 799 F.2d at 832 (finding no formal, public hearing was required). *See also Esposito v. Metro-N. Commuter R. Co.*, 856 F. Supp. 799, 807 (S.D.N.Y. 1994) (same); *infra* at n.6.

### C. Pre-Termination Proceedings Can Support a Finding of Sufficient Due Process

Courts recognize that the totality of the process received is the touchstone of whether a plaintiff received adequate process. *See Liotta v. Borough of Springdale*, 985 F.2d 119, 123 (3d

---

[4] In *Goldberg*, the Supreme Court reasoned that "[i]n almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses." 397 U.S. at 269. This logic does not apply to name-clearing hearings because no "important decisions" are being made. The termination has already happened; the hearing is merely about clearing the plaintiff's name, not reinstatement. *See Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 573, n.12 (1972) ("Once a person has cleared his name at a hearing, his employer, of course, may remain free to deny him future employment for other reasons."); *Lyons*, 851 F.2d at 411 ("Name-clearing hearings are different from most hearings conducted by an agency. Unlike most hearings, they do not address the correctness of a particular course of action. They have no effect on the underlying decision to terminate an employee.") (citations omitted).

Cir. 1993) (citations omitted) (finding pre-termination hearing where plaintiff was free to present his own evidence provided sufficient due process for clearing his name, and no additional hearing was needed); *Wagner v. Tuscarora Sch. Dist.*, No. 04-1133, 2006 WL 167731, at *11 (M.D. Pa. Jan. 20, 2006), *aff'd*, 225 F. App'x 68 (3d Cir. 2007) (finding "Plaintiff was afforded more than one name-clearing hearing" where he was given a pre-termination opportunity to answer the charges against him and he initiated and then abandoned a grievance procedure). In this sense, the total process a plaintiff receives both pre-termination and post-termination can obviate the need for a separate name-clearing hearing.

II. **White Was Given All the Process that He Was Due**

A review of White's pre- and post-termination process, combined with his access to the media, his status as a public figure, and the nature of the alleged defamatory statement, show that he was granted all the process that he was due under the Fourteenth Amendment. As this Court stated, among other things, White:

- Was represented by counsel throughout the process. *See* Dkt. 1-1.

- Was interviewed by the independent investigator and then submitted a written statement to her after the interview that was ultimately included in the report released by Janey ("Report"). SAC ¶¶ 33, 35.

- Received notice of the City's intent to dismiss him. SAC ¶ 103.

- Received a pre-termination hearing before Janey and the City. SAC ¶ 118.

- Collected and provided to Defendants sworn and videotaped statements of at least two witnesses on his behalf before the hearing. SAC at 13 n.2, 16 n.4, ¶¶ 19, 24; Report at 11, 19.

- Was permitted to speak during his hearing. SAC ¶ 118.

- Was not limited in the information he was permitted to provide to the investigator or to Janey, other than the proviso against live testimony at the hearing by anyone other than White. SAC ¶¶ 118–19.

In short, White was given an extraordinary amount of process by Defendants, and certainly more than in the cases White cites for the proposition that he has not received enough process. *See, e.g., Donato*, 96 F.3d at 627 (plaintiff was only told the reasons for her termination and received no other process); *Hostrop*, 471 F.2d at 490 ("the Board met and terminated Hostrop's contract without giving him any hearing or opportunity to speak in his defense. A list of charges that supposedly justified his termination was given to Hostrop some time later."); *Doe*, 753 F.2d at 1112, n.23. White has even received more process than cases finding sufficient process with fewer procedures. *See Chilingirian*, 882 F.2d at 206; *Miller*, 809 F.3d at 833–34; *Endicott,* 644 F.2d at 1216.

Regardless of White's arguments, the fact that he is a public figure is significant. In *Baden*, the Second Circuit noted that, "[w]ith his high degree of access to the news media, Baden did not need a formal hearing as a forum in which to repeat his side of the story." 799 F.2d at 832.[5] "As a public figure, he could presumably have called a press conference and provided any further defense of his record or explanation of his removal from office that he desired to give." *Id*. *See also Esposito*, 856 F. Supp. at 807 ("[A] formal hearing, either pre-termination or post-termination, would not have afforded plaintiff any means beyond those already available to him . . . . [B]ecause media interest in his story was so intense, he had, and took advantage of, ready and pervasive access to the public to refute the allegations against him.").[6] Although White has the same constitutional rights as non-public figures, his status as a public figure

---

[5] The Second Circuit viewed Baden's status as a public figure as another factor weighing against a finding that his due process rights were violated, independently of the fact that Baden's demotion implicated a weaker liberty interest. *Id*. at 832.

[6] *D'Allessandro v. City of Albany*, No. 04-0788, 2008 WL 544701, at *14 (N.D.N.Y. Feb. 26, 2008) ("When a public figure has access to the media, a post-deprivation hearing is not necessarily required because the option of calling a press conference to refute any allegations is available.") (citations omitted); *LaForgia v. Davis*, No. 01-7599, 2004 WL 2884524, at *9 (S.D.N.Y. Dec. 14, 2004) ("Plaintiff is not entitled to a pre- or posttermination hearing as she had access to and made use of the local media to refute the Mayor's statements.").

distinguishes his case from those where greater publicity was required, and affects the due process balancing test set forth by the Supreme Court in *Mathews*.[7] White not only had *access* to the media but in fact utilized that access throughout the investigation and his termination.

As this Court pointed out, White's name-clearing opportunity was sufficiently publicized. White conceded that he is a public figure with access to the media. *See* Dkt. 40 at 13-16; Dkt. 40-1. Some of the information was already known to the public before the Report's release, and some of White's rebuttal evidence was publicly aired. Dkt. 39-1; Dkt. 40-1. White argues that the Report included allegations that were not previously leaked to the public and that the media coverage omitted much of his exculpatory evidence, saying only that he denied the charges and presented evidence that his ex-wife was the aggressor. Pl.'s Supp. Br. at 10-12. However, this does not change the fact that White was a high-profile public figure with the Boston Police Department. If he felt the media coverage was insufficient to clear his name, he could have called his own press conference to present his evidence or submitted additional materials directly to the press. *Baden*, 799 F.2d at 832; *Esposito*, 856 F. Supp. at 807. It is his *access* to the media that is determinative, not whether he chose to avail himself of that access. *Baden*, 799 F.2d at 832; *Grimaldi*, 2018 WL 3435019, at *5. White clearly knew how to avail himself of that access, and in fact did so.

### III. The Nature of the Alleged Defamatory Statement is Relevant

*Baden* is factually analogous to this case not only because both White and Baden are public figures, but also because the nature (rather than the content) of the alleged defamatory

---

[7] The cases White relies on are either distinguishable or do not discuss this issue. *See Doe*, 753 F.2d at 1112, n.23 (finding insufficient due process because employer "refused Doe anything approximating a 'hearing' after it completed its investigation and decided to terminate her," with no discussion of her status as a non-public figure); *Hostrop*, 471 F.2d at 495 (court did not discuss plaintiff's status as a public figure, access to media, or ability to call press conferences); *Huntley v. Cmty. Sch. Bd. of Brooklyn*, 543 F.2d 979 (2d Cir. 1976) (same).

statements are nearly identical. In *Baden*, the alleged defamatory statements consisted of the Mayor's release to the media of letters from the various district attorneys criticizing Baden (together with Baden's written responses). 799 F.2d at 872. Here, the allegedly stigmatizing statement is the Report, which simply reported the <u>allegations</u> against White. As this Court noted, the Report "made no findings regarding any misconduct by White," "offered no assessment of the credibility of witnesses interviewed during the investigation," and "conveyed no recommendations regarding any future course of action." *Id*. What is more, White spoke to the investigator, and provided a written statement to her that was included in the Report. As in *Baden*, the inclusion of White's statement in the context of the Report constituted additional public process that White was afforded by the City and Janey.

## IV.     The Burden on the Government in Providing Additional Process is Significant

Courts must consider whether the burden imposed on the government in providing additional process, such as a public hearing with the right to cross-examination, outweighs the probable value of these added measures. *Mathews*, 424 U.S. at 358; *Baden*, 799 F.2d at 832–33 ("[T]he benefits to Baden of a trial-type hearing would have been marginal at best in view of the less formal process that had been provided to him. The hearing would not have materially lessened the already small risk that any false charges had gone unanswered, given the various prior opportunities Baden had had to answer them. In contrast, the burdens imposed on municipal government by a formal hearing requirement would be significant.").

White requests that the City conduct a name-clearing hearing that is open to the public and compel four witnesses to attend so that he may cross-examine them. Regardless of whether the City and Janey have the authority to conduct the hearing White envisions (e.g., with compelled witness testimony of private citizens), the fiscal and administrative burdens these

9

additional procedures would impose on the Defendants are substantial. Additionally, the burden of publicizing the hearing is unnecessary considering White's ability to easily publicize his version of events by virtue of his status as a public figure. And the policy reasons set forth in *Baden* regarding the efficient and transparent administration of city government, *see* 799 F.2d at 833, are equally applicable here. As such, the burden on Defendants outweighs any utility of these additional formal procedures. *See Esposito*, 856 F. Supp. at 808 (discussing the "*de minimis* utility of a name-clearing hearing" in light of the process already given) (citations omitted); *Moody v. Cnty. of Santa Clara*, No. 15-4378, 2018 WL 2267662, at *5 (N.D. Cal. May 17, 2018) ("[T]he 'probable value' of the 'additional or substitute procedural safeguards' that Moody advocates for does not outweigh the 'administrative burdens' they would entail.").[8]

## CONCLUSION

For the foregoing reasons, Defendants City of Boston and Acting Mayor Kim Janey respectfully request that this Court: (i) deny Plaintiff Dennis White's motion to amend his Complaint with respect to Count I; and (ii) grant such additional relief as the Court deems just and proper.

| | |
|---|---|
| Dated: April 15, 2022 | Respectfully submitted, |
| | **City of Boston and Kim Janey** |
| | By their attorneys, |
| | /s/ *Brian T. Kelly* <br> Brian T. Kelly (BBO # 549566) <br> Joshua C. Sharp (BBO # 681439) <br> Lauren A. Maynard (BBO # 698742) <br> NIXON PEABODY LLP <br> 53 State Street <br> Boston, MA  02109 |

---

[8] White appears to contend that the fact that he was terminated—rather than demoted—somehow changes the calculus such that *Baden* is inapplicable. Not so. *See Esposito*, 856 F. Supp. at 807–08 (applying *Baden* to case of terminated employee); *Moody*, 2018 WL 2267662, at *5 (same).

617-345-1000<br>
bkelly@nixonpeabody.com<br>
jsharp@nixonpeabody.com<br>
lmaynard@nixonpeabody.com

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was filed electronically on April 15, 2022, and thereby delivered by electronic means to all registered participants as identified on the Notice of Electronic Filing.

<i>/s/ Brian T. Kelly</i><br>
Brian T. Kelly