UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DENNIS WHITE )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CITY OF BOSTON and ACTING )<br>MAYOR KIM JANEY, )<br>)<br>Defendants. )<br>) | Civil Action No.: 1:21-CV-10952-LTS |

**DEFENDANTS CITY OF BOSTON AND ACTING MAYOR KIM JANEY'S
<u>MOTION TO LIMIT DISCOVERY</u>**

Defendants City of Boston (the "City") and Acting Mayor Kim Janey ("Mayor Janey") submit this motion to: (1) request clarity regarding the scope of the remaining claims at issue; (2) limit the scope of discovery sought by Plaintiff.

**I.   Background**

In brief, this case relates to Plaintiff Dennis White's service as Commissioner of the Boston Police Department.  As the Court previously noted, the Second Amended Complaint alleges that Plaintiff was appointed Commissioner in February 2021.  Dkt. 57 at 1.  Two days later, he was placed on leave when the media began making inquiries regarding domestic violence allegations.  *Id.*  The City engaged an independent investigator to review the allegations and charged her with producing an investigatory report (the "Report.").  *Id.*  Plaintiff alleges that Mayor Janey subsequently released the Report to the public.  *Id.*  The Report is part of the record before the Court.  Dkt. 39-2.  As the Court has noted:

> [The] nineteen- page memorandum ("the Report") recount[s] the information [the investigator] had gathered, including in an interview she had conducted of White via zoom and from a written statement White had submitted after the interview. In addition to the domestic violence allegations covered by the Globe, the Report

> described a 1993 incident involving White and his niece that was documented in White's IA file. It also outlined concerns the investigator developed concerning general BPD resistance to her requests for information. **The Report made no findings regarding any misconduct by White. It offered no assessment of the credibility of witnesses interviewed during the investigation. And, it conveyed no recommendations regarding any future course of action, including White's termination or reinstatement**. Rather, it summarized information gleaned from documents, interviews with witnesses who accused White of misconduct, and information from White and others disputing those accusations.

Dkt. 49 at 3 (emphasis added). Elsewhere, the Court has noted that the Report:

> . . .simply conveyed the accounts that various witnesses (including White and at least one other person identified by him) had provided . . . . The investigator's report expressed no findings as to witness credibility or misconduct by White, nor did it make any recommendations regarding his continued employment.

Dkt. 57 at 16. n.16.

Mayor Janey terminated Plaintiff on June 7, 2021. *Id.* at 15. Mayor Janey's termination decision was based on her belief that Plaintiff was unable to effectively lead the Boston Police Department. *Id.* "Neither in her termination letter nor in her earlier letter to White did Mayor Janey state that she was finding cause based on a determination that every (or any) witness statement attributing a particular violent act to White was true. She did not credit the witnesses known to the investigator but unnamed in the report, nor did she discredit the witness statements offered by White." *Id.* at 16 n.16. Mayor Janey held a press conference the day of Plaintiff's termination in which she stated that she would "not turn a blind eye to domestic violence against Black women, or any women, for that matter." Compl. ¶¶ 6, 111.

Plaintiff brought suit against the City of Boston and Mayor Janey in Massachusetts Superior Court. The complaint was removed to this Court, where Plaintiff sought to substantially amend it, including by adding various race and gender discrimination claims. After this Court's ruling on Plaintiff's Motion to Amend, there are only three live causes of action: (1) a "stigma-plus" claim against the City of Boston and Mayor Janey; (2) a defamation claim

2

against Mayor Janey; and (3) a privacy act claim against Mayor Janey. The "stigma-plus" and defamation claims appear to be related to the release of the Report, Mayor Janey's comments at a press conference, and Plaintiff's subsequent termination. The privacy act claim is related to the release of the Report.

Plaintiff has submitted broad discovery requests that Defendants believe are untethered to his remaining causes of action. For instance, Plaintiff has served a subpoena on Tasmin Kaplan, the independent investigator who compiled the Report. Among other things, the Subpoena requests that Ms. Kaplan provide Plaintiff with:

- "All documents in any way related to the Investigation and the Investigative Report;"
- "All documents you obtained or relied upon as part of the Investigation;" and
- "All documents concerning, reflecting or constituting any due diligence, research, or investigation performed by you … to investigate the truth or accuracy of the statements and other information relied upon in the Investigative Report."

Plaintiff has further submitted interrogatories to the Defendants focusing on the compilation of the Report, for example:

- "State the name of each witness interviewed by the Investigator."

And he has sent requests for production along the same lines:

- "All communications between the investigator and any witness."
- "All documents concerning the termination and later resumption of the Investigation in late February or early March 2021."

As set for the below, the process by which the Report was compiled is not relevant to any of the remaining causes of action.

### II. The "Stigma Plus" and Defamation Claims Related to the Release of the Report do not Survive the Court's Orders

"Stigma plus" and defamation claims both require some sort of defaming statement. *See, e.g.*, *Wojcik v. Mass. State Lottery Comm'n*, 300 F.3d 92, 97 (1st Cir. 2002); *Shay v. Walters*, 702 F.3d 76 (1st Cir. 2012). "The question of whether a statement is reasonably susceptible of a defamatory meaning is a threshold question for the court." *Id.* at 81. To make that determination, "[t]he communication 'must be interpreted reasonably,' leading a 'reasonable reader' to conclude that it conveyed a defamatory meaning." *Amrak Prods., Inc. v. Morton*, 410 F.3d 69, 72 (1st Cir. 2005) (quoting *Foley v. Lowell Sun Publ'g Co.*, 404 Mass. 9, 11 (Mass. 1989)). "The court [must] examine the statement in its totality in the context in which it was uttered or published. The court must consider all the words used, not merely a particular phrase or sentence." *Id.* at 73 (quoting *Foley*, 404 Mass. at 11). This includes interpreting statements in light of the entire context of the publication. *See id.*

Treating the Report here as the stigmatizing and defamatory statement would be highly unusual. In most instances where an official report fulfills the "stigma" in the "stigma plus" claim, the report comes to a conclusion about the plaintiff's conduct, thereby stigmatizing him in the true sense of the word. *See, e.g.*, *Segal v. City of N.Y.*, 459 F.3d 207, 211 (2d Cir. 2006) (describing the "conclusions in the Matos report," which found a teacher instructed a student to hit another student and recommended terminating the teacher's employment); *Velez v. Levy*, 401 F.3d 75, 82 (2d Cir. 2005) (describing a report that concluded school board member "placed a suspicious powder" in front of the superintendent's door); *Paterno v. Pa. State Univ.*, 688 Fed. Appx. 128, 132 (3d Cir. 2017) (referencing "coaches implicated in the Freeh Report for failing to intervene appropriately in the Sandusky Scandal"); *Shooter v. Arizona*, 4 F.4th 955, 958 (9th Cir. 2021) (75-page report concluding that state legislator "made unwelcome sexualized comments").

4

Similarly, publications that contain all of the facts underlying the author's views, as well as information that allows readers to draw contrary conclusions, do not support a defamation claim. *See Phantom Touring, Inc. v. Affiliated Publ'ns*, 953 F.2d 724, 729–31 (1st Cir. 1992) ("Because all sides of the issue, as well as the rationale for [the author's] view, were exposed, the assertion of deceit reasonably could be understood only as [the author's] personal conclusion about the information presented, not as a statement of fact. . . . [N]o reasonable reader could interpret [the author's] statements as factual assertions of dishonesty. Accordingly, . . . they are not actionable."); *see also Riley v. Harr*, 292 F.3d 282, 290 (1st Cir 2002) ("[T]he basic issue before us is whether the challenged statements . . . implicitly signal to readers 'that only one conclusion . . . was possible,' . . . or whether 'readers implicitly were invited to draw their own conclusions from the mixed information provided,' in which case the First Amendment bars [the] defamation action." (quoting *Phantom Touring*, 953 F.2d at 731)).

As the Court noted after examining the Report in its full context, the Report made no findings of misconduct or assessment of witness credibility and contained no recommendations regarding future actions.  Dkt. 49 at 3; Dkt. 57 at 16 n.16.  Indeed, the Report made no conclusions whatsoever and simply set forth the allegations against Plaintiff *and* Plaintiff's own denials of those allegations.  Readers therefore were not just invited, but were *required* to draw their own conclusions from the information provided.  This falls short of signaling that any particular conclusion is the only one possible and prevents the Report from being stigmatizing or defamatory.  Defendants respectfully suggest that this conclusion is implicit in the Court's previous findings regarding the nature of the Report.

If the Court agrees that the release of the report as the defamatory or stigmatizing statement (as opposed to Mayor Janey's alleged statements) do not survive the Court's Order on

5

Plaintiff's Motion to Amend, Defendants request that the Court issue an order of clarification. Defendants further request that the Court issue an Order under Rule 26 limiting the scope of discovery to exclude documents and information regarding preparation of the Report.

> **III. Even if the "Stigma Plus" and Defamation Claims Related to the Release of the Report Survive, Discovery Should Exclude Information Regarding the Preparation of the Report**

To the extent the stigma plus and defamation claims related to the release of the Report survive the Court's Order, information and documents regarding the preparation of the Report are still irrelevant to Plaintiff's claims.

The stigma plus claim is stated against Mayor Janey and the City of Boston. As the Court has noted elsewhere, the stigma plus cause of action is a procedural due process claim. There are five elements:

> First, the alleged statements must level a charge against the employee that might seriously damage his standing …. Second, the employee must dispute the charges made against him as false. Third, the stigmatizing statements or charges must have been intentionally publicized by the government. That is, the defamatory charges must have been aired in a formal setting …. Fourth, the stigmatizing statements must have been made in conjunction with an alteration of the employee's legal status…. Finally, the government must have failed to comply with the employee's request for an adequate name-clearing opportunity.

*Wojcik*, 300 F.3d at 97 (cleaned up). Even if the allegations within the Report are the stigmatizing statements, how the Report was compiled would not be relevant to any of the five elements of the cause of action. The Stigma Plus action is not simply a libel cause of action dressed up in constitutional garb. In other words, this cause of action is not about the City or the Independent Investigator allegedly producing a shoddy, poorly researched report. It is about the alleged failure of the City to grant Plaintiff a name clearing hearing. Notably, unlike a defamation case, the intent of the City in making the allegedly stigmatizing statement is not an

element of the procedural due process cause of action. Therefore, *how* the investigator went about compiling her report is not relevant to Plaintiff's claims.

With respect to the defamation claim, it is only stated against Mayor Janey. The City of Boston, the Independent Investigator, and the witnesses who allegedly provided defamatory statements to the Independent Investigator (which were republished in the Report) are not defendants. To the extent that the Report could form a basis for a defamatory action *against Mayor Janey*, it could only be through Mayor Janey's alleged *republication* of the Report, which itself *republished* the defamatory statements of the witnesses. The relevant question is therefore not what the *witnesses* knew when they provided information to the Investigator, or what the Investigator knew when she republished those allegations in her Report, but what *Mayor Janey* knew when she allegedly republished the Report to the public. It is only Mayor Janey's intent that is relevant. Plaintiff admits as much in his Amended Complaint. *See* Compl. ¶¶ 175-181. Specifically, Plaintiff will have to prove that in allegedly republishing the Report, Mayor Janey acted with "actual malice," Dkt. 57 at 12, which means "with knowledge that [the statement] was false or with reckless disregard of whether it was false or not." *New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964). "The statements" at issue here are the statements of the witnesses themselves that were allegedly republished twice over, once by the investigator and second by Mayor Janey.

### IV. The Relief Requested is Appropriate

Defendants request that the Court order a limitation on the scope of discovery to exclude information and documents related to the preparation of the Report. Under Federal Rule of Civil Procedure 26, the Court is required to limit the scope of discovery if it determines that proposed discovery is "outside the scope permitted by Rule 26(b)(1)." *See* FRCP 26(b)(2)(C). The Court

may do so "[o]n motion or on its own."  *Id.  See also Green v. Cosby*, No. 3:16-mc-93027-MGM, 2017 WL 1377593, at \*2 (D. Mass. Apr. 11, 2017) (granting motion to quash and stating that even if party lacked standing to challenge subpoena to a non-party, "[i]f the court could effect the relief [a party] seeks sua sponte, the court is not precluded from reaching the same result merely because [a party] ha[s] taken the initiative" (citing *Accusoft Corp. v. Quest Diagnostics, Inc.,* No. 12-40007-FDS, 2012 WL 1358662 (D. Mass. Apr. 18, 2012))); *SEC v. Navellier & Assocs., Inc.*, No. 17-11633-DJC, 2019 WL 688164, at \*2 (D. Mass. Feb. 19, 2019) (allowing motion for protective order and motion to quash deposition subpoena pursuant to Rule 26(b)(1) where information requested was not proportional to the needs of the case).

Moreover, pursuant to Rule 26(c), the Court has broad discretion to issue a protective order in order to protect "a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  Such an order may include "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters."  FRCP 26(c)(1)(D); *see also Town of Lexington v. Pharmacia Corp.*, No. 12-11645-DJC, Dkt. 96 (D. Mass. Jan. 24, 2014) (granting in part motion for protective order excluding certain irrelevant matters from discovery). District Courts have "broad discretion to decide when a protective order is appropriate and what degree of protection is required."  *ClearOne Comms., Inc. v. Chiang*, 276 F.R.D. 402, 404 (D. Mass. 2011) (citations omitted).

As explained above, Plaintiff's discovery requests to Defendants and the subpoena served on Ms. Kaplan exceed the scope permitted by Rule 26(b)(1) because they seek information that is not relevant to Plaintiff's remaining claims.  The irrelevant requests largely fall into one category: documents and information related to the preparation of the Report.  Thus, in order to streamline discovery going forward and minimize the burden and expense of litigating future

8

discovery requests, Defendants ask that the Court exercise its discretion at this juncture and enter an order limiting the scope of discovery to exclude information related to the preparation of the Report.

## V.  Conclusion

For the reasons explained above, Defendants respectfully request that this Court enter an order limiting the scope of all discovery—including requests to Defendants as well as the outstanding subpoena, and any future subpoenas, to third parties—to exclude any documents or information regarding the preparation of the Report.  Defendants further request that, if the Court agrees with Defendants' analysis in part II, *supra*, that the Court issue an order of clarification.

Respectfully submitted,

CITY OF BOSTON and
ACTING MAYOR KIM JANEY

By their attorneys,

*/s/ Brian T. Kelly*_____
Brian T. Kelly (BBO No. 549566)
Joshua C. Sharp (BBO No. 681439)
Lauren A. Maynard (BBO No. 698742)
**NIXON PEABODY LLP**
53 State Street
Boston, MA  02109
(617) 345-1000
bkelly@nixonpeabody.com
jsharp@nixonpeabody.com
lmaynard@nixonpeabody.com

Dated:  September 19, 2022

## LOCAL RULE 7.1 CERTIFICATION

Pursuant to Local Rule 7.1(a)(2), undersigned counsel certify that they have conferred with counsel for Plaintiff on September 12, 2022, and have attempted in good faith to resolve or narrow the issues for the Court. The parties did not reach an agreement.

>                                  */s/ Lauren A. Maynard*
>                                  Lauren A. Maynard

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed electronically on September 19, 2022, and thereby delivered by electronic means to all registered participants as identified on the Notice of Electronic Filing.

>                                  */s/ Lauren A. Maynard*
>                                  Lauren A. Maynard