UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DENNIS WHITE, ) | |
| Plaintiff, ) | |
| v. ) | Civil Action No. 21-10952-LTS |
| THE CITY OF BOSTON and ) ACTING MAYOR KIM JANEY, ) | |
| Defendants. ) | |

ORDER ON PLAINTIFF'S MOTION FOR IN CAMERA REVIEW
[Docket No. 87]

May 2, 2023

Boal, M.J.

Plaintiff Dennis White has moved for in camera review of documents withheld by defendant City of Boston on the basis of attorney-client privilege and/or work product protection. See Docket No. 87. For the following reasons, I grant in part and deny in part White's motion.[1]

I.   BACKGROUND

On February 1, 2021, former Boston Mayor Martin Walsh appointed White to be the Boston Police Department Commissioner. Docket No. 37-1 ¶ 24. Two days later, in response to media reports regarding domestic violence allegations from White's past, Walsh placed White on administrative leave. Id. ¶¶ 25, 26. An independent investigation followed, as did Walsh's departure and his replacement by Acting Mayor Kim Janey. Id. ¶¶ 15, 27.

On April 19, 2021, White's attorney wrote to Henry Luthin, counsel for the City of

---

[1] Judge Sorokin referred the instant motion to the undersigned on March 2, 2023. Docket No. 93.

1

Boston[2], to raise concerns regarding the investigation, the contents of the investigative report, and its release to the public.  White's attorney explicitly threatened "legal action, including claims for defamation and violation of [White's] civil rights and due process rights."  Docket No. 95-1 at 6.  On April 29, 2021, the independent investigator, an outside attorney, produced to Janey a report summarizing the information she had gathered.  Docket No. 37-1 ¶ 101.

On May 14, 2021, Janey and the City of Boston (collectively "the Defendants") sent White a letter indicating their intent to dismiss him, along with a copy of the report.  Id. ¶ 103.  On the same date, Janey informed White that he was required to attend a Zoom hearing that afternoon.  Id. ¶ 102.  The hearing did not occur on May 14 because White filed a complaint in state court and sought a preliminary injunction preventing his removal.  Id. ¶¶ 105, 106.  The Defendants released the report to the public on May 14, which White states was a "highly coercive move to try to force him to leave."  Id. ¶ 107; Docket No. 49 at 4.  On May 25, the state court denied White's request for a preliminary injunction.  Docket No. 49 at 4.

On June 2, 2021, White attended a hearing before the Defendants.  Id. ¶ 118.  On June 7, 2021, Janey issued a termination letter to White.  Id. ¶ 120.  Also on June 7, 2021, the Defendants removed the case to the United States District Court for the District of Massachusetts.  Docket No. 1.  Three claims remain in this action: (1) a "stigma-plus" procedural due process claim against both defendants; (2) a defamation claim against Janey; and (3) a violation of privacy claim against Janey.  Docket No. 78 at 1.

On February 28, 2023, White filed the instant motion.  Docket No. 87.  The City of Boston opposed the motion on March 14, 2023, and White filed a reply on March 30, 2023.

---

[2] Luthin served as Corporation Counsel for the City of Boston from March 2021 to November 2021.  Docket No. 95-1 ¶ 3.  From November 2021 to present, Luthin has served as senior counsel for the City of Boston.  Id. ¶ 2.

Docket Nos. 95, 98. This Court heard oral argument on April 12, 2023.

II.     LEGAL FRAMEWORK

    A.     The City of Boston's Privilege Log

White contends that the City of Boston's privilege log is deficient with respect to four categories of documents. He argues therefore that this Court should conduct an in camera review of the emails and attachments at issue. Docket No. 88 at 2.

A party that withholds otherwise responsive documents on the basis of privilege must expressly make that claim and produce a privilege log. Echavarria v. Roach, No. 16-CV-11118-ADB, 2018 WL 6788525, at *2 (D. Mass. Dec. 26, 2018) (citing to Fed. R. Civ. P. 26(b)(5)(A)). A privilege log must "describe the nature of the . . . communications . . . and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A). In other words, "[t]he detail included in the privilege log must be sufficient to judge whether the undisclosed documents satisfy each element required" for any particular privilege. Clark v. Edison, No. CIV.A. 09-40040-FDS, 2010 WL 3245428, at *3 (D. Mass. Aug. 16, 2010). The party asserting a privilege bears the burden of establishing that it applies. See Crane Sec. Techs., Inc. v. Rolling Optics, AB, 230 F. Supp. 3d 10, 15 (D. Mass. 2017) (citing State of Maine v. United States Dep't of the Interior, 298 F.3d 60, 71 (1st Cir. 2002)).

In the context of a privilege log, the starting point is the initial assertion of privilege which is "more like a prima facie showing that the identified materials were properly withheld on privilege grounds." 8 WRIGHT, MILLER & MARCUS, Federal Practice and Procedure § 2016.1 (3d ed. 2010) at 334-35. Assuming it is initially adequate, the privilege log, upon challenge, may have to be supported by additional material. See Victor Stanley, Inc. v. Creative Pipe, Inc., 250 F.R.D. 251, 267 (D. Md. 2008). As then Magistrate Judge Grimm explained:

> [P]ursuant to Fed. R. Civ. P. 26(b)(5), the party asserting privilege/protection must do so with particularity for each document, or category of documents, for which privilege/protection is claimed. At this first stage, it is sufficient to meet the initial burden by a properly prepared privilege log. If, after this has been done, the requesting party challenges the sufficiency of the assertion of privilege/protection, the asserting party may no longer rest on the privilege log, but bears the burden of establishing an evidentiary basis—by affidavit, deposition transcript, or other evidence—for each element of each privilege/protection claimed for each document or category of document. A failure to do so warrants a ruling that the documents must be produced because of the failure of the asserting party to meet its burden. If it makes this showing, and the requesting party still contests the assertion of privilege/protection, then the dispute is ready to submit to the court, which, after looking at the evidentiary support offered by the asserting party, can either rule on the merits of the claim or order that the disputed documents be produced for in camera inspection.

Id.; see also WRIGHT, MILLER & MARCUS, supra, at 339.

  B.  The Attorney-Client Privilege

  The City of Boston's privilege log contains numerous assertions of the attorney-client privilege. See Docket No. 88-2. The attorney-client privilege protects communications made in confidence by a client to his or her attorney in order to obtain legal advice. In re Grand Jury Subpoena (Custodian of Records, Newparent, Inc.), 274 F.3d 563, 571 (1st Cir. 2001) (citing United States v. Mass. Inst. of Tech., 129 F.3d 681, 684 (1st Cir. 1997)). The privilege assures both attorneys and clients that discussions regarding their cases which are made in confidence will remain undiscoverable. Amgen Inc. v. Hoechst Marion Roussel, Inc., 190 F.R.D. at 289. "Without this assurance, attorneys and clients might be inhibited from engaging in the free, complete and candid exchange of information that is the cornerstone of an effective attorney-client relationship." Id. (quoting Fleet Nat'l Bank v. Tonneson & Co., 150 F.R.D. 10, 13 (D. Mass. 1993)). Nevertheless, "[b]ecause it stands in the way of [the] right to every man's evidence, the privilege applies only to the extent necessary to achieve its underlying goal of ensuring effective representation through open communication between lawyer and client." In re Grand Jury Subpoena, 274 F.3d at 571 (citing Fisher v. United States, 425 U.S. 391, 403 (1976)).

C.  The Work Product Doctrine

The City of Boston's privilege log also asserts work product protection. Docket No. 88-2. The work product doctrine protects (1) documents or other things, (2) prepared in anticipation of litigation, (3) by or for a party or a party's representative. Fed. R. Civ. P. 26(b)(3); Hickman v. Taylor, 329 U.S. 495 (1947). "The underlying purpose of the work product doctrine is to protect the integrity of the adversarial process by creating a zone of privacy for those matters prepared by or for the party or the party's counsel in anticipation of litigation." Amgen Inc. v. Hoechst Marion Roussel, Inc., 190 F.R.D. 287, 290 (D. Mass. 2000). The work product doctrine does not protect the underlying facts contained in the documents. Tyler v. Suffolk County, 256 F.R.D. 34, 38 (D. Mass. 2009); In re Grand Jury Subpoena, 220 F.R.D. 130, 141 (D. Mass. 2004).

III.  ANALYSIS

A.  Emails Between City of Boston Employees

White seeks in camera review of seven emails between City of Boston employees. Docket No. 88 at 10. According to the initial privilege log, it did not appear that any of these emails included attorneys. Id. However, the City asserts that each of the seven emails constitute a thread which contains privileged communication with an attorney within the thread. Docket No. 95 at 2. In addition, it has now produced redacted copies of each of the emails at issue to show the to/from/cc lines of all emails on the email thread and some of the content. Id.

The City has made a prima facie showing of privilege. However, given the description of the threads, and because they contain both non-privileged, as well as purportedly privileged content, this Court believes that in camera review is appropriate for this category. The City of Boston, therefore, must produce the redacted and unredacted versions of the seven documents to this Court.

B.     Emails Copying In-House Attorneys

White seeks in camera review of forty-four[3] emails between City employees where the privilege log indicates that in-house counsel is neither a sender nor direct recipient but is merely copied. Docket No. 88 at 2.

Simply copying in-house counsel on emails does not render otherwise nonprivileged emails privileged. See Kinzer v. Whole Foods Mkt., Inc., No. 20-CV-11358-ADB, 2022 WL 355777, at *1 (D. Mass. Feb. 7, 2022). On the other hand, the emails all post-date the April 19, 2021 letter threatening legal action. The City represents that all emails in this category concern the topics raised in the April 19, 2021 letter, namely: (1) the release of the investigative report; (2) statements to the press; and/or (3) statements made by Janey. Docket No. 95 at 6. This Court finds that the City of Boston has made a sufficient prima facie showing. Nevertheless, in an abundance of caution, given that counsel is only copied, this Court will review this category of documents. Accordingly, the City must produce the following to this Court for in camera review: (1) the forty-one emails in this category; and (2) the emails identified as REVIEW021639 and REVIEW013627.

C.     Emails To/From In-House Attorneys

White seeks in camera review of eighty-nine emails[4] between City of Boston employees

---

[3] Of the forty-four emails, one was sent by Shawn Williams (REVIEW017232) and two were received by Henry Luthin (REVIEW024468 and REVIEW024681). See Docket No. 88-2 at 6, 12, 36. Because these emails were sent or received by an attorney, they appear to be misplaced. This Court will therefore analyze the three emails identified above in the section that addresses emails to and/or from in-house attorneys. In addition, two of the emails identified by White as being to and/or from an in-house attorney appear to merely copy an in-house attorney. These two emails are identified as REVIEW021639 (from Nicholas Martin to "Press Office") and REVIEW013627 (from Nicholas Martin to Stephanie Garrett). See id. at 10, 11. This Court will analyze those two emails in this section.

[4] As previously noted, this Court will include three additional emails, REVIEW017232, REVIEW024468, and REVIEW024681 in this analysis.

and in-house counsel. Docket No. 88 at 12. White argues that the City has not sufficiently shown that in-house counsel's role in the communications was for the purpose of rendering legal advice rather than providing business or non-legal advice. Id. at 12-13.

"Defining the scope of . . . privilege for in-house counsel is complicated by the fact that these attorneys frequently have multi-faceted duties that go beyond traditional tasks performed by lawyers." U.S. Postal Serv. v. Phelps Dodge Refining Corp., 852 F. Supp. 156, 160 (E.D.N.Y. 1994); see The City of Springfield v. Rexnord Corp., 196 F.R.D. 7, 9 (D. Mass. 2000). The attorney-client privilege does not apply when in-house counsel is engaged in "nonlegal work" such as "the rendering of business or technical advice unrelated to any legal issues." United States v. Windsor Capital Corp., 524 F. Supp. 2d 74, 81 (D. Mass. 2007) (citation omitted).

The instant emails include at least one of the following in-house attorneys as either the sender or recipient: (1) Henry Luthin; or (2) Shawn Williams. The privilege log indicates that the emails reflect communications regarding legal advice about (1) the release of the investigative report; (2) statements to the press; (3) statements made by the acting mayor; and/or (4) White's hearing. See Docket No. 88-2. All of the emails were sent after April 19, 2021[5], the date on which White's attorney threatened legal action. Indeed, Luthin filed an affidavit stating that after receiving the April 19, 2021 letter, he provided legal advice to the City's employees in anticipation of White filing suit. Docket No. 95-1 at 3 ¶ 6. White's arguments to the contrary are at best speculative.

The City of Boston has carried its burden here. Accordingly, it need not produce

---

[5] Some of the entries show a date of with a letter rather than a number. For example, entries include "A/30/2021," "5/A/2021," and "5/1A/21." Docket No. 88-2 at 2, 3, 9. At oral argument, the parties explained that this was due to a conversion error, and the letter "A" should be the number "4". On April 13, 2023, White filed a corrected version of the exhibit. Docket No. 100.

documents from this category for in camera review.

D.     Attachments[6]

White seeks in camera review of thirteen[7] attachments to email communications involving in-house counsel. Docket No. 98 at 2, n.2. Eight of the attachments contain proposed redactions to the investigative report[8] and three of the documents are described as Janey's draft statements related to White's termination hearing.[9] Docket No. 98-1 at 2-5. The remaining two documents are described as notes and a memorandum rendering legal advice in connection with White's termination hearing. Id. at 5. As described, these items represent core attorney-client communications and/or work product, particularly in light of the April 19, 2021 letter.

Accordingly, the City of Boston need not produce the documents in this category for in camera review.

IV.    ORDER

For the foregoing reasons, this Court grants in part and denies in part White's motion for in camera review. On or before May 16, 2023, the City of Boston must provide the documents outlined above to this Court for in camera review.

/s/ Jennifer C. Boal
JENNIFER C. BOAL
United States Magistrate Judge

---

[6] White initially sought review of 101 documents, but in light of the City's supplemental production and explanations, White has reduced his request to thirteen documents. Docket No. 98 at 2, n.2.

[7] White's memorandum lists fourteen separate documents, however document REVIEW017554 is repeated twice. See Docket No. 98 at 2, n.2.

[8] These attachments are listed as REVIEW011453, REVIEW011454, REVIEW013921, REVIEW017552, REVIEW 017554, REVIEW022817, REVIEW017597, and REVIEW021905. Docket No. 98-1 at 2-3.

[9] These attachments are listed as REVIEW013285, REVIEW013265, and REVIEW017122. Id. at 4-5.